HARRY L. ESTRIDGE, PLAINTIFF, v. FRED DENSON AND WIFE, DEFENDANTS, S. D. No. 40-359

AND

CAROLINA PAVING CO., INC., PLAINTIFF, v. FRED DENSON AND WIFE, DEFENDANTS, S. D. No. 40-360

AND

LULA WILSON, EXECUTRIX OF THE ESTATE OF DAMUS WILSON, PLAINTIFF, v. FRED DENSON, DEFENDANT, S. D. No. 40-386.

(Filed 20 June, 1967.)

1. **Assignments for Benefit of Creditors § 1; Fraudulent Conveyances § 1— Transfer by debtor of his property in exchange for other property of different form is not unlawful.**

An assignment by a debtor of property to a new corporation without obligations of its own, in exchange for stock in the corporation, even though such corporation is formed for the purpose of satisfying creditors, *held* not to constitute a voidable assignment even though at the time the debtor was insolvent, since the debtor obtained full value for his property in the form of stock, and it is not unlawful for an insolvent debtor to transfer his property for other property of a different form. G. S. 23-1, G.S. 23-2. Whether the transfer by the debtor of his shares of stock in the corporation to particular creditors is subject to attack by other creditors is not presented, nor is the right of other creditors to compel the corporation to permit them, or any of them, to share in the distribution of the funds presented for decision.

2. **Execution § 16—**

Judgment creditors may not by supplemental proceedings reach funds which the judgment debtor had validly transferred prior to the institution of the judgment creditors' suits.

3. **Judgments § 29—**

An order entered in the cause is not binding on one who was not made a party until after the order was entered.

4. **Appeal and Error § 49—**

Findings of fact and conclusions of law relating to matters not presented for decision by the lower court will be stricken on appeal in order that possible future proceedings bringing such matters in issue may not be prejudiced.

APPEAL by plaintiffs from *Jackson, J.*, at the 16 May 1966 Non-Jury Civil Session of MECKLENBURG, docketed and argued at the Fall Term 1966 as No. 281.

These are three suits separately instituted by the respective plaintiffs for the recovery of amounts alleged to be due them from the respective defendants. The plaintiffs having recovered judgments and issued executions thereon, which were returned unsatisfied, brought supplemental proceedings. Crab Orchard Development Company, Inc., and R. S. Pate were permitted to intervene by orders entered in the respective suits by Hasty, S.J., which orders the plaintiffs also assign as error upon the present appeal. The remaining facts are set forth in the opinion.

*John G. Newitt for plaintiff appellant Wilson.*

*W. A. Dennis for plaintiff appellants Estridge and Carolina Paving Company, Inc.*

*J. Donnell Lassiter and Kennedy, Covington, Lobdell & Hickman for R. S. Pate, Intervenor.*

*W. Faison Barnes and Carl W. Howard for Intervenor Crab Orchard Development Company, Inc.*

LAKE, J. Each of the plaintiffs sued Denson (or Denson and wife) and recovered judgment against him (or them), the validity of which judgment is not in question. Each plaintiff caused to be issued on such judgment an execution which was duly returned unsatisfied. Each plaintiff thereupon instituted supplemental proceedings, asserting by verified petition that the judgment debtor (or debtors) had funds on deposit with First Federal Savings and Loan Association of Charlotte (hereinafter called First Federal), which deposit was pledged to secure an indebtedness to First Federal, but in which the judgment debtor (or debtors) had an equity which should be applied to the payment of the judgment. Each such petition asserted that Denson (or Denson and wife) had formed Crab Orchard Development Company, Inc. (hereinafter called Crab Orchard) and had transferred assets to it. Each petition prayed that First Federal be restrained from dealing with the deposit without prior order of the court, that a lien in favor of the plaintiff be impressed upon the deposit and that the judgment debtor (or debtors) be restrained from transferring assets and be directed to appear and show, among other things, what interest he (or they) has (or have) in Crab Orchard.

In each case, Judge Campbell entered an order directing the Densons, First Federal, Crab Orchard and Fred Denson, Inc., to appear and be examined relative to any assets of Denson (or Denson

and wife) which should be applied to the payment of the judgment, and restrained the transfer of such assets subject to further orders of the court.

The three matters were consolidated for such hearing. The record before us does not disclose what evidence was offered at the hearing before Judge Campbell. Crab Orchard appeared but was not then made a party to any of the proceedings. It does not appear to what extent it participated in that hearing.

Judge Campbell entered an order reciting that it appeared to the court that the Densons are the owners of the certificates of deposit and that First Federal had a first lien thereon. He ordered that any payment by First Federal on account of such certificates be made to the clerk, to be held by him pending the further order of the court. This order made no reference to any right or claim of Crab Orchard.

Pursuant to the order of Judge Campbell, funds were paid over by First Federal to the clerk. Each plaintiff then filed a motion that the clerk apply such funds to the payment of the judgments. Crab Orchard then filed in each case a petition that it be made a party thereto and be permitted to assert its right to the funds, alleging that on 28 October 1960, a year before the entry of any of the judgments and some months before the filing of any of these suits, Denson and wife assigned to Crab Orchard the certificates of deposit so issued by First Federal, subject to its lien. Judge Hasty entered an order in each case making Crab Orchard a party and permitting it to file a petition setting forth its claim to the funds, which it did. Thereafter, R. S. Pate filed a petition that he be made a party, asserting a partial assignment by Crab Orchard to him. This was ordered by Judge Hasty. Pate's right, if any, is derived through the alleged assignment to Crab Orchard by the Densons. Allen Griffin also sought and obtained permission to intervene but thereafter assigned his rights to Crab Orchard, the basis of his alleged right not being stated in the present record.

In its several petitions asserting its claim to the funds, Crab Orchard alleges:

> "Although this Intervenor was originally organized by Fred Denson and certain of its shares of capital stock were issued to Fred Denson in exchange for the assignment of said certificates of deposit, said exchange was for the sole and express purpose of reassigning said shares of capital stock to the creditors of Fred Denson and wife, Letha B. Denson. Said stock certificates were in fact assigned to creditors of Fred Denson and wife, Letha B. Denson in satisfaction of their respective claims and

*such creditors now constitute the sole owners of all validly out-*
*standing shares of this intervenor."*

Crab Orchard alleges in its petition in the suits by plaintiffs
Estridge and Carolina Paving Company that these plaintiffs, to-
gether with other creditors of the Densons, were offered shares of
Crab Orchard in satisfaction of their claims against the Densons,
but rejected the offer, electing instead to bring these suits against
the Densons. These two plaintiffs admit this in their answers to the
petitions, thus establishing that prior to the institution of these ac-
tions they knew of the proposal to organize Crab Orchard and that
they were offered shares in Crab Orchard in satisfaction of their
claims against the Densons and rejected the offer. Crab Orchard does
not allege that a similar proposal was made to the plaintiff Wilson,
whose claim against Denson was apparently overlooked.

Each plaintiff, answering the petitions of Crab Orchard and Pate,
alleges the assignment from the Densons to Crab Orchard was fraud-
ulent as to such plaintiff and that at the time of the partial reas-
signment by Crab Orchard to Pate he knew that the assignment from
Denson to Crab Orchard was a preferential transfer forbidden by
G.S. 23-1.

The matter then came on for hearing before Judge Jackson to
determine the rights of the parties in the funds so held by the clerk
under the order of Judge Campbell. Crab Orchard offered evidence
which included testimony by Leon Olive, who had been the attorney
for Denson and had performed the legal services in connection with
the organization and incorporation of Crab Orchard, Lewis R. Frost,
President of Crab Orchard, and W. A. Dennis, attorney for the plain-
tiffs Estridge and Carolina Paving Company, he being called as an
adverse witness.

Mr. Dennis testified that in 1960, or early 1961, this being prior
to the bringing of the present suits, he, representing the plaintiffs
Estridge and Carolina Paving Company, attended a conference of
Denson creditors in the office of Mr. Olive at which a proposal to
issue stock in Crab Orchard was discussed, but he does not recall
any mention of an assignment of the certificates of deposit.

Mr. Olive testified that Crab Orchard was organized "for benefit
of Mr. Denson and his creditors." Mr. Frost "put $3,000 of his own
money in the company and received stock for that." Mr. Olive com-
municated with creditors of Denson, including the plaintiffs Estridge
and Carolina Paving Company, through their attorney Mr. Dennis,
telling them of his plan for getting the Densons' creditors "off their
backs," which plan he testified was this:

"The mechanics of the issuance was that we would issue the stock directly to Mr. and Mrs. Denson who would in turn endorse it back over to the creditor, and then we would issue the new certificates of stock directly to the creditors. We offered to do exactly this on the indebtedness on the Carolina Paving and to Mr. Estridge, with their full knowledge as to what we are doing. At first, Mr. Dennis told me that they would go along. We actually issued the stock certificates to Carolina Paving and then Mr. Estridge, and then Mr. Dennis came back and said 'No' that his clients would not go along on this and therefore we voided those stock certificates and they are now in the stock book showing their issuance to Mr. and Mrs. Denson and the endorsement over, and then their reissuance to Mr. and Mrs. Estridge and Carolina Paving and they are marked 'voided' when they were not accepted in payment of our debt, which was not a judgment at that time. At that time there was no judgment whatsoever on the record that had been obtained by either Carolina Paving or Mr. Estridge. I might add that at that time I was not aware of any claim that had been made or any indebtedness to Mr. Wilson. I don't remember talking to Mr. Newitt (Attorney for Wilson) at all. I may have but I don't remember that.

"As a consideration passing to Crab Orchard Development Company in exchange for the issuance of stock, to Mr. and Mrs. Denson, Mr. and Mrs. Denson assigned directly by written consignment *(sic)* all of his rights, title and interest to the stock certificates, or certificates of deposit, at First Federal Savings & Loan Association, in the sum at that time I believe of $70,500.

\* \* \*

"The stock certificates issued to Mr. and Mrs. Denson were subsequently reassigned by them to their creditors. \* \* \*

"As to the purpose of the incorporation, in the very beginning, there was some talk by the directors, at the very first meeting that we might do some building. That was one of the purposes putting in the money by Mr. Frost, to give the corporation some cash, that we might involve in building. About, oh, within another one month or six weeks or that area there was another meeting of the directors, at which time we determined that we would not get involved in any kind of business venture with anyone and that we would remain a corporation solely for the purpose of holding the certificates of deposit and

then, of course, to pay the stockholders whatever equity that we ever got from First Federal from the certificates of deposit. * * *

"I told Mr. Dennis about the original assignment. He saw them. He was aware of what we were doing in this case, what the Densons had asked us to do, and that the stock or interest in Crab Orchard Dev. Co. was going to be given to the creditors, all creditors including Carolina Paving and Estridge and all other creditors that we knew about in satisfaction of what indebtedness that the Densons had to these creditors and most of the creditors went along and accepted and *they are the present stockholders. And those creditors are the same stockholders in Crab Orchard today except Carolina Paving and Harry L. Estridge.* * * * (Emphasis added.)

"I believe there was fifty shares that was issued to Mr. and Mrs. Denson that have not been reassigned or was not reassigned to his creditors and where that 50 shares is I don't know. I haven't the slightest idea whether he still owns these or whether he has assigned those shares to someone who has not forwarded them on to the corporation for reissuance."

Mr. Frost testified that he paid cash for his stock and that Crab Orchard originally opened an office for the purpose of developing a tract of land owned by Denson, with whom Mr. Frost had no previous affiliation.

Mrs. Wilson testified that neither she nor her husband had been offered stock in Crab Orchard, and a vice-president of First Federal testified that it had no notice of the assignment to Crab Orchard of Denson's equity in the certificates of deposit until some time after the above mentioned order by Judge Campbell.

Judge Jackson made "Findings of Fact," including these:

"On October 26, 1960 [prior to the institution of these suits] the Densons entered into an agreement with Crab Orchard under the terms of which Crab Orchard agreed to issue shares of its capital stock to the Densons in consideration for the assignment by the Densons to Crab Orchard of all of the Densons' right, title and interest in and to the certificates * * *. Said agreement between Crab Orchard and the Densons further provided that the shares of Crab Orchard's stock so issued to the Densons would be reassigned to the Densons' creditors in satisfaction of their respective claims and upon the further provision that any shares not so reassigned to the Densons' creditors would be returned to the corporation as treasury stock.

"On October 28, 1960, prior to the institution of these actions and, pursuant to said agreement with Crab Orchard, the Densons made an assignment under seal to Crab Orchard of all of the Densons' right, title and interest in and to certificates of deposit having a full value of $70,500 owned by the Densons and held by First Federal subject to First Federal's right to hold the same under its collateral assignment thereof.

"In consideration for the assignment of said certificates of deposit, Crab Orchard issued to the Densons * * * shares * * *. All of the shares so issued to the Densons were reassigned to their various creditors except 500 shares of the par value of $1.00 each. Certificates for shares so reassigned were transferred on the stock book of the corporation.

"Prior to the commencement of their respective actions, the plaintiffs Estridge and Carolina Paving Company were afforded an opportunity to accept some of the Crab Orchard stock which had theretofore been issued to the Densons in satisfaction of their respective claims against the Densons. Said plaintiffs rejected such offer. There is no evidence that the plaintiff Wilson was afforded a similar opportunity. The attorney who acted in behalf of the Densons and Crab Orchard was not aware of the plaintiff Wilson's claim. An effort was made by said attorney to satisfy all known creditors of the Densons by offering them Crab Orchard stock.

"At the time of the assignment of said certificates of deposit by the Densons to Crab Orchard, the Densons had substantial assets other than said certificates of deposit * * *.

"There is no evidence that the Densons were insolvent at the time of their assignments of said certificates of deposit to Crab Orchard."

Upon these facts Judge Jackson made "Conclusions of Law," which included these:

"The assignment of certificates of deposit by the Densons to Crab Orchard * * * did not constitute an assignment for the benefit of creditors within the meaning of Section 23-1 of the General Statutes of North Carolina. Said assignment was for valuable consideration and was not fraudulent as to the plaintiffs.

"Neither of the Densons has any present right, title or interest in or to the funds * * * and neither of them had any right, title or interest in or to the certificates of deposit * * *

at the time of the institution of the supplemental proceedings by the plaintiffs herein.

"The plaintiffs are not entitled to reach any part of the funds now held by the clerk by these supplemental proceedings * * *."

Judge Jackson thereupon ordered the clerk to pay from the funds held by him under Judge Campbell's order the claim of R. S. Pate, assignee of Crab Orchard, and to pay over the remainder to Crab Orchard. First Federal was ordered to pay any remainder of the deposit to Crab Orchard when the same is released from the First Federal lien.

The multiplicity of pleadings, motions and testimony contained in the present record fails to bring into sharp, clear focus all aspects of the total picture of the transactions of the Densons. However, it is clear that what the plaintiffs have sought to do by these proceedings supplemental to execution is to obtain a preference over others who are, or were, creditors of Denson (or Denson and wife) insofar as the funds now in the hands of the clerk are concerned. The question for Judge Jackson's determination was whether in these supplemental proceedings in execution the plaintiffs are entitled to an order directing the clerk to apply these funds to the payment of their judgments. He has ruled that they are not so entitled, and in this there is no error. He has ruled that Crab Orchard is the owner of the funds, and entitled to have them paid over to it by virtue of the assignment to it by the Densons prior to the institution of these suits by the plaintiff. In this there was no error. He has based these rulings upon his conclusion that at the time the plaintiffs started their respective suits against Denson (or against Denson and wife), obtained their respective judgments against him (or against Denson and wife), issued executions on those judgments and instituted these supplemental proceedings to reach Denson's (or Denson and wife's) property, Denson (or Denson and wife) had no property right in the deposits from which these funds were derived. In this there is no error.

Judge Jackson did not have before him and did not decide the right of the plaintiffs, or of any of them, in a proceeding brought for that purpose against Crab Orchard, to compel Crab Orchard to permit these plaintiffs, or any of them, to share in any distribution of these funds by it to its stockholders. Consequently, that question is not before this Court on this appeal. All that is before us is the correctness of Judge Jackson's order declaring that the assignment by Denson (or Denson and wife) to Crab Orchard was valid and that it antedated all of these suits, judgments, executions and supplemental proceedings so as to preclude any right in any of the plain-

tiffs to compel the clerk to pay these funds, or any part thereof, to them. There was no error in this order.

According to the record before us, the assignment of Denson's interest in the certificates of deposit now in question was to Crab Orchard, a new corporation, in consideration for the issuance by it to Denson of certificates of stock in Crab Orchard. It is true that the record indicates that the corporation was formed "to get the creditors off their [the Densons'] backs." Whatever the purpose may have been, the testimony before Judge Jackson was that the procedure for carrying it out was the organization of a new corporation, the transfer to it of property owned by Denson, the issuance of stock to Denson in exchange for that property, and the subsequent transfer of stock certificates by Denson to his creditors or others. The record shows that there was at least one other stockholder, Lewis R. Frost, who paid cash to the corporation in return for stock issued by it direct to him.

When these transactions were completed, the corporation was the owner of property transferred to it by Denson, Frost and possibly others. In return it had issued its stock certificates, making those individuals the owners of its shares. It appears that thereafter Denson, who has disappeared, transferred most, if not all, of the shares so issued to him. If he did not transfer all of them, we do not know what has become of the other shares issued to Denson. He may still hold them. They may have been pledged by him to secure bona fide loans to him. The transferees of some, or all, of the shares originally issued to Denson may or may not hold such shares subject to the claims of these plaintiffs. If so, that does not alter the nature of the transaction between Denson and Crab Orchard. It does not make the certificates of stock issued to Denson invalid, nor does it defeat the title of the corporation to that which it received for its shares.

To set aside or disregard the assignment to Crab Orchard of these accounts receivable will destroy or seriously deplete the value of the outstanding stock. The record indicates nothing as to the identity or bona fides of the present owners of those shares. A transfer by Denson of some of those shares to one or more of his creditors may, itself, be deemed an assignment for the benefit of his creditors. See: *Bank v. Tobacco Co.,* 188 N.C. 177, 124 S.E. 158; 6 Am. Jur., 2d, Assignments For Benefit Of Creditors, § 47. That, however, is not the transaction before us on this record.

G.S. 23-1 forbids a preference to one or more creditors in an assignment for the benefit of creditors. G.S. 23-2 authorizes an assignee for benefit of creditors to sue to recover a preferential transfer by

the debtor within four months prior to registration of the deed of assignment, if the creditor so preferred knew or had reasonable ground to believe the transferor-debtor was insolvent. Apart from these statutes a transfer, admittedly preferential, by a debtor admittedly insolvent, is not unlawful or subject to attack on that ground. *Guggenheimer v. Brookfield,* 90 N.C. 232. Nothing else appearing, a preferential transfer is not a fraudulent conveyance.

A transfer by a debtor, even though insolvent, to a newly formed corporation in exchange for shares of stock in that corporation is a transfer for value, at least where, as appears upon this record, the corporation issues other shares to other stockholders for cash. It is not unlawful for an insolvent debtor to transfer his property in exchange for other property of a different form. This being a newly formed corporation, without obligations of its own, it would appear that Denson received full value, in the form of stock, for the property transferred by him, but even if he made a bad bargain and received less in value than he transferred, that circumstance would not make the transfer to the corporation unlawful or invalid.

It is well settled that the corporate entity will be disregarded when used to shield fraud. *Terrace, Inc. v. Indemnity Co.,* 243 N.C. 595, 91 S.E. 2d 584; *Erickson v. Starling,* 233 N.C. 539, 64 S.E. 2d 832; *Mills v. Building & Loan Asso.,* 216 N.C. 664, 6 S.E. 2d 549. However, this record does not support an application of that principle.

To set aside the transfer by Denson to Crab Orchard would put in jeopardy the rights of the present holders of the stock issued by the corporation in exchange for the property so transferred to it by Denson. The record indicates that most, if not all, of them were creditors of Denson (or of Denson and wife) who took their shares in full settlement of their claims against him (or them). The evidence before Judge Jackson would not support a finding that they are not bona fide purchasers of their shares for value. Two of the plaintiffs, being offered the same opportunity, elected not to avail themselves of it, but to pursue their present course.

There is in this record evidence that Denson was insolvent when the transfer from him to Crab Orchard took place. The contrary finding, or conclusion, in Judge Jackson's order is error. However, for the reasons above mentioned, the solvency of Denson at that time is not a material fact in the present inquiry and this error in Judge Jackson's order is not sufficient basis for granting a new trial. If Denson was then insolvent, there would still be no sufficient evidence in this record to warrant the superior court in ignoring or setting aside the transfer from Denson to Crab Orchard.

This is a supplemental proceeding to subject the funds in question to the payment of the plaintiffs' judgments against Denson, executions issued against his property having been returned unsatisfied. The insurmountable barrier in the plaintiffs' path is that these funds were no longer Denson's property when these proceedings were instituted and they cannot be reached by them in this way. Judge Jackson has so found and there is ample evidence to support this finding.

Crab Orchard was not made a party to the proceeding at the time of Judge Campbell's order with reference to these certificates of deposit. It is true that Crab Orchard was ordered to appear at the hearing which resulted in Judge Campbell's order, but the purpose of so ordering it to appear seems to have been that it might "be examined" relative to the assets of the Densons. Crab Orchard did not become a party to these proceedings until it was allowed to intervene by the order of Judge Hasty for the purpose of asserting its present claim. Judge Campbell's order does not purport to determine its rights. Furthermore, Crab Orchard, not being a party at the time of the entry of the order by Judge Campbell, is not barred by that order from asserting its claim at this time. *Kayler v. Gallimore*, 269 N.C. 405, 152 S.E. 2d 518; *Bank v. Casualty Co.*, 268 N.C. 234, 150 S.E. 2d 396.

There was no error in the several orders of Hasty, S.J., permitting intervention by Crab Orchard and Pate in these proceedings.

In order that the rights, if any, of the plaintiffs in any proceeding which they deem it advisable to institute against Crab Orchard, its stockholders or assignees be not prejudiced thereby, we vacate and set aside Finding of Fact Number 13 in the judgment of Jackson, J., reading: "There is no evidence that the Densons were insolvent at the time of their assignment of said certificates of deposit to Crab Orchard." In so doing, we are not to be understood as intimating that the Densons, or either of them, were or was then insolvent, the determination of that question not being material to the matter before Jackson, J., or before us.

For the same reason, we vacate and set aside so much of Conclusion of Law Number 1 in the judgment of Jackson, J., as reads: "did not constitute an assignment for the benefit of creditors within the meaning of Section 23-1 of the General Statutes of North Carolina." Whether the assignments of the certificates of deposit to Crab Orchard constituted an assignment for benefit of the creditors of Den-

son within the meaning of G.S. 23-1 was not before Jackson, J., and is not before us. We express no opinion with reference thereto.

Except as so modified, the judgment of Jackson, J., is Affirmed.