LULA WILSON, EXECUTRIX OF THE ESTATE OF DAMUS B. WILSON v. CRAB
ORCHARD DEVELOPMENT COMPANY, INC., LEON OLIVE, LEWIS
B. FROST, AND FRED DENSON

No. 45

(Filed 30 January 1970)

**1. Pleadings § 38—  judgment on pleadings — power of court**

A court of record has inherent power to render judgment on the plead-
ings where the facts shown and admitted by the pleadings entitle a party
to such judgment.

**2. Pleadings § 38—  judgment on pleadings — motion — issue pre-
sented**

A motion for judgment on the pleadings is in the nature of a demurrer
and presents the issue of law, Are the matters set up in the pleading of
the opposing party sufficient in law to constitute a cause of action or a
defense?

**3. Pleadings § 38—  judgment on pleadings — admissions by movant**

A party who moves for judgment on the pleadings admits, for the pur-
pose of such motion, (1) the truth of all well-pleaded facts in the plead-
ing of his adversary, together with all fair inferences to be drawn from
such facts, and (2) the untruth of his own allegations controverted by
the pleadings of his adversary.

**4. Pleadings § 38—  judgment on pleadings — admissions — conclu-
sions and epithets**

A party who moves for judgment on the pleadings does not thereby
admit the conclusions of his adversary or mere epithets such as "fraud"
and "fraudulent."

**5. Pleadings § 38—  judgment on pleadings — consideration of plead-
ings**

In determining the motion for judgment on the pleadings, the court
is limited to the facts properly pleaded in the pleadings before it, infer-
ences reasonably to be drawn from such facts, and matters of which the
court may take judicial notice.

**6. Pleadings § 38—  judgment on pleadings — consideration of exhibits**

On motion for judgment on the pleadings, an exhibit attached to and
made a part of the pleading is properly considered; the terms of such
exhibit control other allegations of the pleading attempting to paraphrase
or construe the exhibit, insofar as the allegations are inconsistent with
the terms.

**7. Pleadings § 19;  Limitation of Actions § 16—  statute of limita-
tions — complaint — demurrer**

A complaint is not demurrable for the reason that it shows upon its
face that the cause of action alleged is barred by the statute of limitations.

**8. Limitation of Actions § 16—  plea of statute — the answer — mo-
tion for judgment on pleadings**

When defendant pleads the statute of limitations in his answer, and

the plaintiff files no reply thereto and the complaint shows upon its face facts which, without more, support such plea in bar, defendant's motion for judgment on the pleadings should be granted on that ground.

**9. Pleadings § 38— judgment on pleadings — incorrect reasons**

The trial court is not required to specify its reason for allowing a motion for judgment on the pleadings; if it does state a ground for its judgment which is incorrect, but the judgment was nevertheless proper, it will be affirmed on appeal.

**10. Limitation of Actions § 16; Assignments for Benefit of Creditors § 1— plea of statute of limitations**

Allegations in defendant's further answer (1) that it appears on the face of the complaint that the plaintiff seeks to have defendants' assignment of savings certificates to a corporation on 28 October 1960 declared an assignment for benefit of creditors, (2) that plaintiff had actual knowledge of the assignment almost seven years prior to the institution of the present action, and (3) that plaintiff's claim is barred by the three-year statute of limitations set forth in G.S. 1-52(2), *held* a sufficient plea of the statute as a bar to plaintiff's right of action.

**11. Assignments for Benefit of Creditors § 1— sufficiency of complaint — transfer for valuable consideration**

Allegations by plaintiff, a judgment creditor of an insolvent defendant, that defendant and his wife assigned savings certificates to a newly-formed corporation in exchange for the simultaneous issue to defendant of shares in the corporation, which shares the defendant then used to satisfy his own creditors, *held* insufficient to constitute an assignment for benefit of creditors, it appearing from the complaint that the transfer of the savings certificates to the corporation was for a valuable consideration, moving to defendant from the corporation, and that the defendant parted irrevocably with all his rights in the certificates.

**12. Assignments for Benefit of Creditors § 1— definition**

A general assignment for the benefit of creditors is ordinarily a conveyance by a debtor without consideration from the grantee of substantially all his property in trust to collect the amount owing to him, to sell and convey the property, to distribute the proceeds of all the property among his creditors, and to return the surplus, if any, to the debtor.

**13. Corporations § 21— powers — use of assets**

The assets of a corporation, nothing else appearing, are not held by it in trust but may be used by the corporation in the operation of its business.

**14. Corporations § 28— dissolution — application of assets**

A corporation, upon dissolution, is under a duty first to apply its assets, including the capital acquired by it in the exchange of stock, to the payment of its own debts and then to distribute the remainder to its then stockholders, observing the respective rights of the preferred and common shares.

**15. Corporations § 21— powers — acquisition of property in trust**

A corporation may receive property, other than its capital, upon its agreement to hold it in trust for designated persons.

**16. Pleadings § 38— judgment on pleadings — construction of complaint**

Upon motion for judgment on the pleadings, the complaint must be liberally construed in plaintiff's favor.

**17. Trusts § 14— constructive trust — assignment of savings certificates to corporation — judgment creditors of assignor — preferences**

Allegations that insolvent defendant and his wife assigned to a newly-formed corporation their rights and interests in certain savings certificates in exchange for the simultaneous issue to defendant of shares of stock in the corporation, which shares the defendant then used to satisfy his own creditors, *held* insufficient to give rise to a constructive trust in the savings certificates on behalf of the plaintiff, a judgment creditor of defendant, where (1) there is no allegation of fraud or breach of duty by the corporation, (2) there is no allegation of any prior wrongdoing by the defendant in the acquisition of his title to the certificates, (3) there is no allegation that the transfer was part of a contemplated preference of other creditors over the plaintiff, and (4) there is no allegation of preferential treatment to, or by, the corporation or in which the corporation participated.

**18. Trusts § 14— constructive trust — creation**

A constructive trust is a duty or relationship imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty, or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust.

**19. Trusts § 14— constructive trust — unjust enrichment**

A constructive trust is a fiction of equity, brought into operation to prevent unjust enrichment through the breach of some duty or other wrongdoing.

**20. Trusts § 14— *constructive trust* — fraud — breach of duty**

A common, indispensable element in the situations out of which a constructive trust is deemed to arise is some fraud, breach of duty, or other wrongdoing by the holder of the property, or by one under whom he claims, the holder himself not being a bona fide purchaser for value.

**21. Corporations § 12— knowledge of dominant shareholder imputed to corporation**

Where, at the time shareholder assigned to a newly-formed corporation his rights in savings certificates, the corporation was completely dominated by the shareholder and his attorney, and they or their nominees were its only directors and officers, the corporation is deemed to have acquired the interest in the certificates with notice of facts then known to the shareholder, including his then intent as to his own future control or transfer of the stock issued to him in exchange for the savings certificates.

**22. Limitation of Actions §§ 12, 18; Assignments for Benefit of Creditors § 2— three-year limitation — accrual of action — pursuit of different remedy**

Assuming that transfer in 1960 of savings certificates from insolvent de-

fendant to a newly-formed corporation was an assignment for the benefit of creditors forbidden by G.S. 23-1, an action on that ground instituted in 1967 by a judgment creditor of the defendant is barred by the three-year statute of limitations, G.S. 1-52(2) ; the fact that plaintiff, in good faith, pursued another remedy between 1961 and 1967, which proved unavailable, does not extend the time allowed for the institution of the present action.

**23. Limitation of Actions § 4— time of running of statute — accrual of action**

The period of the statute of limitations begins to run when the plaintiff's right to maintain an action for the wrong alleged accrues; the cause of action accrues when the wrong is complete, even though the injured party did not then know · the wrong had been committed.

**24. Limitation of Actions § 7— accrual of action — fraud**

A cause of action to set aside an instrument for fraud accrues and the statute of limitations thereon begins to run when the aggrieved party discovers the facts constituting the fraud, or when, in the exercise of reasonable diligence, such facts should have been discovered.

**25. Assignments for Benefit of Creditors § 1— parties liable — attorney — sufficiency of allegations**

In judgment creditor's action to have declared as an assignment for benefit of creditors a transfer by insolvent defendant and his wife of savings certificates to a newly-formed corporation, the complaint *is held* to allege no cause of action against defendant's attorney, where the complaint alleges only that the attorney participated in the formation of the corporation for the purpose of "getting creditors off the back of" defendant.

MOORE, J., did not participate in the consideration or decision of this case.

On certiorari to review the decision of the North Carolina Court of Appeals in 5 N.C. App. 600.

This action was instituted 5 July 1967 in the Superior Court of Mecklenburg County for the purpose of having an assignment of certain savings certificates by the defendant Denson and wife to the defendant Crab Orchard Development Company, Inc., hereinafter called Crab Orchard, declared an assignment for the benefit of the creditors of Denson, including the plaintiff. The record shows there was no service of summons upon the defendants Denson and Frost but Frost demurred to the complaint on the ground that it did not state a cause of action against him and, the demurrer being overruled, answered to the merits, thereby entering a general appearance and conferring jurisdiction over his person upon the court.

The defendants Crab Orchard, Olive and Frost filed a joint

answer, which included a plea of the statute of limitations in bar of the plaintiff's action. No reply was filed by the plaintiff. Upon motion of these defendants for judgment on the pleadings, the court entered judgment dismissing the action on the ground that the plaintiff's action is barred by the three-year statute of limitations. The Court of Appeals affirmed this judgment and certiorari was granted to review its decision.

The long and complex complaint alleges, in substance, the following, the numbering of the allegations being revised:

1. The plaintiff is a judgment creditor of Fred Denson. Execution was issued upon the judgment and returned with the notation that the sheriff of Mecklenburg County was unable to find any assets of Denson upon which to levy.

2. Denson was the owner of savings certificates in the amount of $70,500, subject to a pledge to First Federal Savings & Loan Association.

3. On 19 October 1960, Denson and Olive, his attorney, incorporated and organized Crab Orchard. Upon completion of the organization, Denson, his wife, Olive and Frost were its only stockholders, directors and officers. On 20 October 1960, Denson and wife and Crab Orchard entered into a written agreement. It recited that the Densons were "desirous of assigning their right" in the savings certificates to Crab Orchard in return for the issuance by it of shares of its common and preferred stock. This agreement further recited, "Another consideration of the corporation for the issuance of the said stock is to assist [the Densons] in the payment of his judgment creditors and other creditors." It further recited that the Densons "have agreed with the corporation that all of the stock so issued shall be used for that purpose" and any shares issued to them and not so used would be turned back to the corporation "as treasury stock" except for one share to be retained by the Densons. The agreement, following these recitals, was that the Densons "agree that all of the capital stock of the corporation issued to them and not used for the purpose of satisfying their creditors" would be returned to the corporation and treated as treasury stock.

4. Olive, as attorney for Denson, incorporated and organized Crab Orchard for the purpose of getting "the creditors off the back of Fred Denson." For that purpose the savings certificates were assigned to Crab Orchard and Crab Orchard

agreed to "assign" (i.e., issue) all of its stock to Denson "for the purpose of satisfying all creditors" of Denson, of which the plaintiff was then one. It issued 32,260 shares, of the par value of one dollar each, to Denson.

5. Denson thereupon "reissued" (i.e., transferred) all of these shares as follows: To his creditor Estridge 3,900 shares, to his creditor Carolina Paving Company 6,200 shares, to "unknown creditors" 19,160 shares and to Olive, for services in forming the corporation, 3,000 shares. No shares were offered to or transferred to the plaintiff, who had no knowledge of these transactions until some time after they occurred. At the time of the transfer of the shares, Denson was insolvent so that the transfer of the shares by Denson was a preference of the creditors to whom they were so transferred.

6. The said shares were issued by Crab Orchard to Denson on 28 October 1960, on which date Denson and his wife assigned their right in the savings certificates to Crab Orchard.

7. Crab Orchard accepted the assignment of the savings certificates "upon the condition that Crab Orchard would issue shares of corporate stock in Crab Orchard" to Denson and his wife, who agreed that "all of the stock so issued shall be used" to "assist Fred Denson * * * in the payment of Fred Denson's * * * creditors."

8. On 31 December 1960, Crab Orchard, Denson and wife, Olive, as secretary of Crab Orchard, and stockholders Frost, Olive, S. L. McManus, Helen D. McManus and Burrows (the last three not otherwise identified in the complaint), assigned to R. S. Pate (not a party to this action) the right to receive the first $10,000 collected on the savings certificates, Pate being a creditor of Denson. This assignment recited that Pate had contemplated an action to set aside the assignment to Crab Orchard of the savings certificates, as a preference to creditors other than Pate and fraudulent as to him, but had agreed not to institute such action if the assignment to him of such interest in the certificates was "carried out." This assignment to Pate also provided that the savings certificates would not be used as security for any other loan.

9. The plaintiff had no notice of any of the above assignments or stock issuances and transfers "until after November 24, 1961 when the plaintiff brought supplemental proceedings" and the court ordered Denson and Crab Orchard to be exam-

ined. "All the details" were not known to the plaintiff "until the case on appeal [From the judgment that the plaintiff was not entitled to reach funds in the hands of Crab Orchard by supplemental proceedings. See 270 N.C. 556, 155 S.E. 2d 190] was being made up, some time in 1966."

10. The plaintiff was a creditor of Denson when Crab Orchard was incorporated and when the above mentioned assignments and the issuances and transfers of the shares of stock occurred. Denson was then and still is insolvent.

11. "All of said transfers" were fraudulent as to creditors in that they "prevented this plaintiff from collecting her claim, removed the assets of Denson from execution, prevented any assignment to the plaintiff or the giving of security to the plaintiff," and preferred Pate and other creditors of Denson over the plaintiff. The plaintiff and other creditors of Denson are entitled to share equally in the proceeds of the savings certificates for the reasons that: (a) the assignment to Crab Orchard was "accepted by Crab Orchard upon the trust that it would hold the assigned equity in the certificates for the payment of the then existing creditors"; (b) the assignments were made when the assignees knew Denson was insolvent and knew that the assignment "was made as an assignment for benefit of creditors"; (c) the assignment of the savings certificate to Crab Orchard and the assignment to Pate were secret insofar as the plaintiff is concerned and thereby the plaintiff was prevented from receiving, with the other creditors of Denson, an equal division of his assets.

12. For these reasons the proceeds of the savings certificates are held by Crab Orchard "impressed with a trust or right in the plaintiff to share equally with the other creditors of Fred Denson" and therefrom the defendant should be required to pay to the plaintiff the amount of her judgment against Denson, $5,000 with interest and costs.

13. Prior to any distribution of the proceeds of the savings certificates, the plaintiff notified the defendant of her claim.

The answer of the defendants admits: The plaintiff is a judgment creditor of Denson; Denson did not offer her any shares of Crab Orchard stock; Denson, Olive and Frost became shareholders of Crab Orchard; Denson has disposed of all shares issued to him "except for shares having a par value of $500," of which he is still the record owner; Crab Orchard and Denson entered into the agree-

ment of 20 October 1960; on 28 October 1960 Denson and wife assigned to Crab Orchard the savings certificates and Crab Orchard, in consideration of such assignment, issued to Denson shares of common and preferred stock; on 31 December 1960 Crab Orchard and others named therein executed the agreement with Pate. The remaining allegations of the complaint are denied.

As a first further answer and plea in bar, the defendants allege: The plaintiff seeks to have the assignment of the savings certificates by Denson and wife to Crab Orchard declared an assignment for benefit of creditors; the plaintiff had actual knowledge of the assignment "almost seven years" prior to the institution of the present action; it was recorded in the office of the register of deeds more than six years prior to the institution of the action; and, therefore, the plaintiff's claim is barred by the three-year statute of limitations, G.S. 1-52(2). The defendants also allege that the plaintiff is barred by her laches.

As another further answer and plea in bar, the defendants allege, in substance: In 1960 Denson, a real estate developer, was being pressed by creditors for immediate payment of large debts which, though solvent, he lacked the immediate ability to pay. Denson and wife owned the savings certificates. Pursuant to a plan devised by them, Crab Orchard was organized and their right in the certificates was assigned to it in consideration for its issuance of shares of its common and preferred stock. The original plan was that Crab Orchard would engage in a real estate venture of its own, but that part of the plan was abandoned after Crab Orchard was organized. All of the stock issued by Crab Orchard "to the Densons was subsequently reassigned to various creditors of the Densons in full satisfaction of their respective claims except for a certificate for shares having a par value of $500, which said certificate the Densons still own of record." The only shares issued by Crab Orchard were 32,260 shares to the Densons, 3,000 shares to Frost for $3,000 in cash, and 3,000 shares to Olive for professional services to Crab Orchard. The exchange of Crab Orchard's stock for the interest of the Densons in the savings certificates was a sale of the certificates "for full and fair consideration." No trust relationship between Crab Orchard and the plaintiff or any other person was created thereby. Crab Orchard now holds or will receive as proceeds of the savings certificates approximately $36,700 less certain obligations for attorneys' fees. It has heretofore paid out of such proceeds approximately $14,600 in attorneys' fees, taxes and court costs and approximately $5,700 to R. S. Pate. It is entitled to retain for the benefit of its creditors and shareholders all proceeds of the certificates now held or hereafter re-

ceived by it. None of the defendants is indebted to the plaintiff. Crab Orchard has filed with the Secretary of State articles of dissolution and, as soon as it is permitted to do so, intends to liquidate.

*Newitt & Newitt for plaintiff appellant.*

*Barnes & Dekle for defendant appellees.*

LAKE, J.

[1, 2] A court of record has inherent power to render judgment on the pleadings where the facts shown and admitted by the pleadings entitle a party to such judgment. *Erickson v. Starling,* 235 N.C. 643, 71 S.E. 2d 384; *Raleigh v. Fisher,* 232 N.C. 629, 61 S.E. 2d 897; 71 C.J.S., Pleading, § 424. A motion for such judgment is in the nature of a demurrer and presents the issue of law, Are the matters set up in the pleading of the opposing party sufficient in law to constitute a cause of action or a defense? *Jones v. Warren,* 274 N.C. 166, 161 S.E. 2d 467; *Van Every v. Van Every,* 265 N.C. 506, 144 S.E. 2d 603; *Erickson v. Starling, supra; Raleigh v. Fisher, supra.*

[3, 4] A party who moves for judgment on the pleadings thereby admits, for the purpose of the determination of such motion: (1) The truth of all well-pleaded facts in the pleading of his adversary, together with all fair inferences to be drawn from such facts; and (2) the untruth of his own allegations controverted by the pleading of his adversary. *Jones v. Warren, supra; Shaw v. Eaves,* 262 N.C. 656, 138 S.E. 2d 520; *Erickson v. Starling, supra; Raleigh v. Fisher, supra.* He does not thereby admit the conclusions of his adversary stated in such pleading or mere epithets such as "fraud" and "fraudulent." *Jones v. Warren, supra; Van Every v. Van Every, supra;* 71 C.J.S., Pleading, § 426.

[5, 6] In determining the motion the court looks only to the pleadings. It hears no evidence, makes no findings of fact and does not take into account other statements of fact in briefs of the parties, or in testimony or allegations by them in a different proceeding. It is limited to the facts properly pleaded in the pleadings before it, inferences reasonably to be drawn from such facts and matters of which the court may take judicial notice. *Erickson v. Starling, supra;* Strong, N.C. Index 2d, Pleadings, § 38; 71 C.J.S., Pleading, § 426. An exhibit, attached to and made a part of the pleading, is so considered. *Van Every v. Van Every, supra.* The terms of such exhibit control other allegations of the pleading attempting to paraphrase or construe the exhibit, insofar as these are inconsistent with its terms.

**[7, 8]**  Although a complaint is not demurrable for the reason that it shows upon its face that the cause of action alleged is barred by the statute of limitations, it is well settled in this State that when the defendant pleads the statute of limitations in his answer, the plaintiff files no reply thereto and the complaint shows upon its face facts which, without more, support such plea in bar, the defendant's motion for judgment on the pleadings should be granted on that ground. *Reidsville v. Burton*, 269 N.C. 206, 152 S.E. 2d 147; *Acceptance Corp. v. Spencer*, 268 N.C. 1, 149 S.E. 2d 570; *Van Every v. Van Every, supra;* McIntosh, North Carolina Practice & Procedure, 2d ed., § 373, and Phillips' 1969 pocket parts thereto.

**[9]**  The trial court is not required to specify its reason for allowing a motion for judgment on the pleadings. Strong, N.C. Index 2d, Pleadings, § 38. If it does state a ground for its judgment which is incorrect, but the judgment was nevertheless proper, it will be affirmed on appeal. *Acceptance Corp. v. Spencer, supra.* In the *Spencer* case, judgment on the pleadings was entered dismissing a counterclaim on the ground that it was barred by the statute of limitations, this being the ground therefor stated in the motion. Affirming the judgment, Parker, C.J., speaking for the Court, said:

> "Original defendants' counterclaim is so fatally deficient in substance as against plaintiff that it presents no material issue of fact to support a recovery from plaintiff of damages in the amount of $50,000, or to operate as a setoff against plaintiff's claim. Consequently, it is subject to a judgment on the pleadings. The judgment on the pleadings should have been granted on the ground that the original defendants' counterclaim is fatally deficient in substance. Therefore, the granting of the judgment on the pleadings in favor of plaintiff was correct, though it was placed on the wrong ground."

**[10]**  In their first further answer, the defendants allege that it appears upon the face of the complaint that the plaintiff seeks to have the assignment by Denson and wife to Crab Orchard on 28 October 1960 declared an assignment for the benefit of creditors, that if such liability exists it is a liability created by statute, that the plaintiff had actual knowledge of the assignment almost seven years prior to the institution of this action and, therefore, her claim is barred by the three-year statute of limitations set forth in G.S. 1-52(2). This is, in form, a sufficient plea of the statute as a bar to the plaintiff's right of action. *Bank v. Warehouse Co.*, 172 N.C. 602, 90 S.E. 698. It far surpasses the mere assertion, without any allegation of facts to support it, that the plaintiff's cause of action is

barred by the statute. Such unsupported assertion has repeatedly been held insufficient to constitute the plea in bar. *Lassiter v. Roper,* 114 N.C. 17, 18 S.E. 946; *Pope v. Andrews,* 90 N.C. 401; *Humble v. Mebane,* 89 N.C. 410.

Consequently, the plaintiff having filed no reply to this plea, we turn to the complaint to see whether: (1) it fails to state facts constituting a cause of action against the defendants, or (2) if it states a cause of action, it also shows facts sufficient in themselves to support the plea that such cause of action is barred by the statute of limitations. If either of these inquiries be answered in favor of the defendants, their motion for judgment on the pleadings was properly allowed, even though the superior court granted it on the second ground only. The Court of Appeals resolved both inquiries in favor of the defendants and affirmed the judgment.

[11] The Court of Appeals said, "We hold that the facts alleged in the complaint do not constitute an assignment for the benefit of creditors." We agree.

G.S. 23-1 provides: *"Debts mature on execution of assignment; no preferences.* — Upon the execution of any voluntary deed of trust or deed of assignment for the benefit of creditors, all debts of the maker thereof shall become due and payable at once, and no such deed of trust or deed of assignment shall contain any preferences of one creditor over another, except as hereinafter stated."

[12] It will be observed that this statute does not define an assignment for benefit of creditors but merely forbids a preference in such assignment. We must go, therefore, to the common law, as declared in the decisions of this Court, to determine what constitutes an assignment for the benefit of creditors. In 6 Am. Jur. 2d, Assignments for Benefit of Creditors, § 1, it is said:

> "A general assignment for the benefit of creditors is ordinarily a conveyance by a debtor *without consideration from the grantee* of substantially all his property *in trust* to collect the amount owing to him, to sell and convey the property, to distribute the proceeds of all the property among his creditors, and to return the surplus, if any, to the debtor." (Emphasis added.)

[11] The assignment of 28 October 1960 from Denson and wife to Crab Orchard was, according to the complaint, made in exchange for the simultaneous issue to Denson of 32,260 shares of Crab Orchard stock to Denson. The fair construction of the complaint is that Crab Orchard, a newly formed corporation, had no other assets and no liabilities, except perhaps obligations for nominal amounts for

organizational expenses. That being true, the shares issued to Denson, when received by him, had a value equal to the value of the property transferred by him and his wife to Crab Orchard. Thus, at that stage of the proceedings, Denson had available for his creditors as much property as he had prior to the assignment to Crab Orchard. Though he was then insolvent, according to the complaint, it was not unlawful or a violation of any duty owed to the plaintiff or his other creditors for Denson so to change the form of his property, nothing else appearing. *Estridge v. Denson, etc.,* 270 N.C. 556, 565, 155 S.E. 2d 190. The transfer of the certificates to Crab Orchard was for a valuable consideration, moving to Denson from Crab Orchard.

[13] The assets of a corporation, nothing else appearing, are not held by it in trust. They, like the assets of any other person, may be used by the corporation in the operation of its business. The complaint does not state the objects for which Crab Orchard was incorporated, as set forth in its charter. While, upon this motion for judgment on the pleadings, we may not consider the allegation in the answer to the effect that, at that stage of the proceedings, it was contemplated that Crab Orchard would engage in the real estate business, we may reasonably assume that its charter autho-rized Crab Orchard to conduct some business. Within the limits of its corporate powers, it was free to use for the carrying on of busi-ness the capital acquired by it in exchange for the stock which it issued.

[14, 15] Upon dissolution of the corporation, it would be under a duty first to apply its assets, including such capital, to the payment of its own debts and then to distribute the remainder to its then stockholders, observing the respective rights of the preferred and common shares. *Teague v. Furniture Co.,* 201 N.C. 803, 161 S.E. 530. A corporation may, of course, receive property, other than its capital, upon its agreement to hold it in trust for designated persons. There is, however, at least, serious doubt that a corporation may make a valid contract to hold in trust for specified persons, or a specified group of persons, to whom it is not otherwise obligated, the capital it receives in exchange for its issuance of its own stock, so as to defeat the rights of its own creditors and of transferees of such stock therein. See: *Brinson v. Supply Co.,* 219 N.C. 498, 14 S.E. 2d 505; *Teague v. Furniture Co., supra.* That question is not presented in the present case, for it appears from the complaint that the agreement between Crab Orchard and Denson was not that it would hold the proceeds of the certificates of deposit in trust for the

creditors of Denson, but that, in exchange for such certificates, it would issue stock to Denson, which stock he would use to satisfy his own creditors.

The complaint alleges that Denson contracted with Crab Orchard that he would use all of the shares it issued to him for the purpose of satisfying his creditors and would return to it any shares not so used by him. The complaint then alleges that all of the shares issued to Denson by Crab Orchard have been "reissued," i.e., transferred, by him, including "19,160 shares to unknown creditors." (Though the answer alleges that, as of the date of its filing, Denson was still the record owner of a few shares, the brief of the defendants states that these also have now been transferred of record.) Crab Orchard cannot pay over any of its assets to the plaintiff without depleting the fund in which these shareholders are entitled to participate. The complaint does not allege any misconduct or bad faith by any of these shareholders. It does not allege any transfer by Denson to anyone other than a creditor of his. Even if shares of Crab Orchard stock now outstanding are held by or under a transferee from Denson who was not his creditor at the time the stock was issued by Crab Orchard, the complaint alleges no facts which would permit Crab Orchard to deny the right of such person to participate as a shareholder in the final distribution of its assets.

The complaint does not allege that the transfers of the shares by Denson to his creditors were to be on a *pro rata* basis. Apparently, what was contemplated was simply that Denson, not having access to the funds represented by the pledged certificates of deposit, converted his equity therein into 32,260 shares of stock with which he would negotiate, on a case by case basis, settlements with his creditors. It appears from the complaint that this is what he did. In this, there is no basis for an inference that the agreement between Denson and Crab Orchard contemplated that Crab Orchard was to hold the equity in the certificates, or their proceeds, in trust for Denson's creditors and certainly there is in this no basis for an inference that Crab Orchard was, under any circumstances, to return anything to Denson. Denson parted irrevocably with all his rights in the certificates.

There are decisions by this Court holding a mortgage, given by an insolvent person upon substantially all of his property to secure a preexisting debt so as to prefer the beneficiary of the mortgage over his other creditors, is void as a preferential assignment for the benefit of creditors forbidden by G.S. 23-1. *Bank v. Tobacco Co.,* 188 N.C. 177, 124 S.E. 158; *Odom v. Clark,* 146 N.C. 544, 60 S.E.

513; *Bank v. Gilmer*, 117 N.C. 416, 23 S.E. 333; *Bank v. Gilmer*, 116 N.C. 684, 22 S.E. 2. It would seem such mortgage is more closely analogous to a voluntary and preferential deed of trust which is also within the condemnation of G.S. 23-1. In any event, our attention has been called to no decision holding that a transfer, by an insolvent, of substantially all of his property to a newly formed corporation in consideration for its issue to him of all of its shares of stock, is an assignment for benefit of the transferor's creditors, or is otherwise affected by G.S. 23-1.

In 6 C.J.S., Assignments for Benefit of Creditors, § 4k, it is said:

"In a sale of property there is a fixed price but no trust, while in an assignment there is a trust and no fixed value given to the property. In a sale there is no reversion or return to the seller, while in an assignment, on the satisfaction of the creditors, a trust results in favor of the assignor in the residue of the unappropriated property or its proceeds."

The transaction between the Densons and Crab Orchard, as set forth in the complaint, was a sale by the Densons of their interest in the certificates of deposit, not an assignment of those certificates for the benefit of the creditors of Denson.

[16, 17]    The plaintiff contends also that her complaint, liberally construed in her favor, as it must be upon a motion for judgment on the pleadings (*Tilley v. Tilley*, 268 N.C. 630, 151 S.E. 2d 592; *Burton v. Reidsville*, 240 N.C. 577, 83 S.E. 2d 651), is sufficient to state a cause of action for the enforcement of a constructive trust. The Court of Appeals held that the complaint does not allege facts giving rise to a constructive trust. We agree.

[18-20]    A constructive trust is a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust. *Teachey v. Gurley*, 214 N.C. 288, 199 S.E. 83; *Garner v. Phillips*, 229 N.C. 160, 47 S.E. 2d 845; Strong, N.C. Index 2d, Trusts, § 14. Unlike the true assignment for benefit of creditors, which is an express trust, intended as such by the creator thereof, a constructive trust is a fiction of equity, brought into operation to prevent unjust enrichment through the breach of some duty or other wrongdoing. It is an obligation or relationship imposed irrespective of the intent with which such party acquired the property, and in a well-nigh unlimited variety of situations. See:

*Electric Co. v. Construction Co.,* 267 N.C. 714, 148 S.E. 2d 856; *Speight v. Trust Co.,* 209 N.C. 563, 183 S.E. 734; *Bryant v. Bryant,* 193 N.C. 372, 137 S.E. 188; Lee, North Carolina Law of Trusts, § 13a (3rd ed. 1968); 54 Am. Jur., Trusts, § 218; 89 C.J.S., Trusts, §§ 139, 142. Nevertheless, there is a common, indispensable element in the many types of situations out of which a constructive trust is deemed to arise. This common element is some fraud, breach of duty or other wrongdoing by the holder of the property, or by one under whom he claims, the holder, himself, not being a bona fide purchaser for value.

[17, 21] The complaint alleges no fraud or breach of duty by Crab Orchard. Having issued its stock in return for the interest of the Densons in the certificates of deposit, Crab Orchard is a purchaser of that interest for value. It appears from the complaint that, at the time of the assignment to it by the Densons, Crab Orchard was a newly formed corporation completely dominated by Denson and his attorney. They, or their nominees, were its only directors and officers. Consequently, Crab Orchard must be deemed to have acquired the interest in the certificates of deposit with notice of facts then known to Denson, including Denson's then intent as to his own future control or transfer of the stock issued to him in return for the transfer of his interest in the certificates. See: 54 Am. Jur, Trusts, § 218. However, the complaint does not allege any prior wrongdoing by Denson in the acquisition of his title to the certificates of deposit, nor does it allege any intention by him, at the time of his transfer to Crab Orchard, to deal with the shares of stock unlawfully or in violation of any legal duty owed by him to the plaintiff. Liberally construed in favor of the plaintiff, it alleges that Denson then intended to transfer to his creditors all of the shares issued to him in payment of the claims of such creditors and that he did so.

The allegation in the complaint that Crab Orchard agreed to issue its stock to Denson "for the purpose of satisfying *all* creditors" of Denson clearly goes beyond the terms of the agreement attached to and made part of the complaint. (Emphasis added.) The agreement speaks for itself and controls the more extensive allegation. Assuming, however, that the complaint correctly interprets the agreement, it expressly negatives the existence of any plan or intent to prefer some creditors of Denson over others at the time the transfer to Crab Orchard occurred. Thus, the transfer to Crab Orchard of the Densons' interest in the certificates of deposit, which was not, itself, a preference to any creditor of Denson, is not alleged in the

complaint to have been then intended as a step in carrying out a then contemplated preference.

The preferences of other creditors of Denson over the plaintiff took place when Denson, after his transaction with Crab Orchard, transferred shares of stock, belonging to him, to some of his creditors without making a comparable payment or transfer to the plaintiff. Crab Orchard having acquired its interest in the certificates of deposit for value and without notice of any intent of Denson's to make a preferential transfer of the proceeds of his transaction with it, Crab Orchard's right to hold the property so acquired by it cannot be affected by a wrongful act subsequently planned and executed by Denson. Especially is this true where, as here, to impose a constructive trust upon the property would defeat or impair the right of subsequent bona fide purchasers of the shares from Denson. There is nothing whatever in the complaint to suggest that any of the "unknown creditors" to whom Denson transferred shares did not acquire those shares in complete good faith and in ignorance of any right of the plaintiff. Having accepted the shares in satisfaction of their claims against Denson, they are purchasers for value.

The complaint alleges no preferential transfer to Crab Orchard or by Crab Orchard or in which Crab Orchard participated. Each preference alleged in the complaint occurred when Denson transferred stock to his creditors, which was after Crab Orchard acquired its interest in the certificates of deposit. No such preference can be the basis for a declaration that Crab Orchard now holds as constructive trustee the interest in the certificates of deposit transferred to it by Denson at a time when, according to the complaint, no such preference was contemplated.

The allegations in the complaint, with reference to the transfer to R. S. Pate of a portion of Crab Orchard's interest in the certificates of deposit, do not allege any violation by Crab Orchard of any duty to or right of the plaintiff. Pate, not being a party to this action, no judgment rendered herein could affect his right to retain the property so transferred to him. It appears from the complaint that Crab Orchard made such transfer to Pate in settlement of its own controversy with him, in which Pate threatened to sue Crab Orchard upon a theory similar to that now asserted by the plaintiff. The complaint does not allege that Crab Orchard made its settlement with Pate in bad faith. If, however, such settlement be assumed to have been wrongful, the wrong done thereby was not to the plaintiff but to the creditors, if any, of Crab Orchard and to the stockholders of Crab Orchard. The plaintiff was neither.

[22]    The Court of Appeals held that, assuming the transfer by the Densons to Crab Orchard to be an assignment for the benefit of creditors forbidden by G.S. 23-1, the plaintiff's right to maintain this action on that ground is barred by the statute of limitations contained in G.S. 1-52(2), which provides that an action is barred within three years when "upon a liability created by statute, other than a penalty or forfeiture, unless some other time is mentioned in the statute creating it." Again, we agree.

[23, 24]    Ordinarily, the period of the statute of limitations begins to run when the plaintiff's right to maintain an action for the wrong alleged accrues. The cause of action accrues when the wrong is complete, even though the injured party did not then know the wrong had been committed. *Jewell v. Price*, 264 N.C. 459, 142 S.E. 2d 1; *Motor Lines v. General Motors Corp.*, 258 N.C. 323, 128 S.E. 2d 413; *Lewis v. Shaver*, 236 N.C. 510, 73 S.E. 2d 320. The plaintiff contends that this rule does not apply here for the reason that her action is "on the ground of fraud" and so the statute of limitations does not begin to run until the discovery by her of the facts constituting the fraud. See G.S. 1-52(9). In *Vail v. Vail*, 233 N.C. 109, 63 S.E. 2d 202, this Court held that a cause of action to set aside an instrument for fraud accrues and the statute of limitations thereon begins to run "when the aggrieved party discovers the facts constituting the fraud, *or when, in the exercise of reasonable diligence, such facts should have been discovered.*" (Emphasis added.)

[22]    It is a sufficient answer to the plaintiff's contention in this respect to note that her complaint alleges that she had no notice of the matters of which she complains "until after November 24, 1961 when the plaintiff brought supplemental proceedings under G.S. 1-352 et seq., and Judge Campbell ordered First Federal and Denson and *Crab Orchard* to be examined." (Emphasis added.) It thus appears upon the face of the complaint that the transfer from the Densons to Crab Orchard, of which the plaintiff complains, occurred 28 October 1960 and that the plaintiff acquired knowledge of Crab Orchard's existence and of some connection between Crab Orchard and the certificates of deposit as early as 24 November 1961, nearly six years prior to the institution of this action. If she did not then have actual knowledge of all facts now alleged in her complaint, reasonable diligence would thus have disclosed them to her. The fact that, in the meantime, she, in good faith, pursued another remedy, which turned out to be unavailable (See, *Wilson v. Denson*, 270 N.C. 556, 155 S.E. 2d 190), does not extend the time allowed by the statute for the institution of the present action.

The complaint alleges no cause of action against the defendant Frost. No act of his is mentioned therein except that he, as a stockholder of Crab Orchard, signed the agreement with Pate on 31 December 1960, two months after the transfer from the Densons to Crab Orchard. The only other reference in the complaint to Frost is the statement that at some undesignated time, possibly at the time of the transfer from the Densons to Crab Orchard, he was the treasurer "or other officer" of Crab Orchard and "later" became its president.

[25]   The complaint alleges no cause of action against the defendant Olive. No act by him is alleged in the complaint except that, as the secretary of Crab Orchard, he signed its agreement with Pate and, as attorney for Denson, he participated in the formation of Crab Orchard, was one of its incorporators, stockholders and directors and "became" its secretary. The complaint alleges that Olive, as such attorney, formed Crab Orchard "for the purpose of 'getting the creditors off the back of Fred Denson' " and 3,000 shares of Crab Orchard stock were "issued" to Olive "for forming the corporation and the plan," by which it appears to be meant that these shares were transferred to Olive by Denson. It is alleged that, as secretary of the corporation, Olive participated in the "assignment" (i.e., issue) of "all shares of corporate stock in Crab Orchard to Fred Denson and Leitha B. Denson."

Service of summons was not had upon the defendant Denson so no judgment could be rendered in this action against him. In any event, the complaint discloses that the plaintiff has already recovered judgment against Denson for the full amount of her claim.

There was, therefore, no error in the granting of the motion of the defendants Crab Orchard, Olive and Frost for judgment on the pleadings.

Affirmed.

MOORE, J., did not participate in the consideration or decision of this case.