SCHOOL COMMITTEE OF SEVENTY-FIRST CONSOLIDATED SCHOOL DISTRICT ET AL. v. BOARD OF EDUCATION OF CUMBERLAND COUNTY AND BOARD OF COMMISSIONERS OF CUMBERLAND COUNTY.

(Filed 12 December, 1923.)

1. **Schools — Districts — Consolidation — Taxation—Bonds—Elections— Counties—Board of Education—Discretion.**

Where, prior to an election of a school district to vote upon the question of issuing bonds and levying a special tax for the location and erection of public school buildings, assurance is given by the county board of education that the buildings would be located in the geographical center of the district, and upon this assurance the bonds and special tax were approved, the change in the location of the school buildings is a matter within the discretion of the board, when it is further made to appear that another district had since been added to the original one, with its approval, by consolidation according to law, which had voted to contribute their proportional part of the expenses of the district thus consolidated.

2. **Same—Courts.**

The courts will not interfere with the exercise of its discretion by the county board of education in locating public school buildings within a school district therein, when not in abuse of the discretion vested in the board.

3. **Same—Referendum.**

Where the county board of education has by referendum ascertained the approval of a school district as to the relocation of a place previously proposed by it for its public school buildings, it will be received as evidence of its good faith in the exercise of its discretion, notwithstanding the referendum was not made in strict accordance with law.

4. **Appeal and Error—Schools—Findings of Fact—Review.**

The findings of fact upon the evidence by the judge of the Superior Court, upon which he bases his conclusions of law as to the abuse of its discretion by the county board of education in locating or relocating a place for the erection of its public school buildings, is not conclusive on the Supreme Court on appeal.

**5. Schools—Taxation—Bond Issues—Constitutional Law.**

Where a school district has been consolidated with another having valid authority to issue bonds for public school purposes, and levy a special tax therefor, and has complied with Article VII, section 7, of the Constitution as to the payment of its proportionate part, the bonds when issued will be a valid obligation upon both of the districts so consolidated.

**6. Schools—Taxation—Bonds—Statutes.**

Where two school districts have been consolidated and have voted for bonds and a special tax levy for public school purposes under the provisions of chapter 87, Public Laws, Extra Session of 1920, but have not issued the same or incurred obligations thereunder, the bonds to be issued should be in the name of the consolidated district, under the provisions of the Public Laws of 1923, ch. 136, sec. 266.

Appeal from *Sinclair, J.,* at September Term, 1923, of Cumberland.

Prior to 1 October, 1921, several districts having an equal rate of special school tax were consolidated and designated Seventy-first Consolidated School District. By virtue of Public Laws, Extra Session 1920, ch. 87, the board of commissioners on the first Monday in October, 1921, ordered an election to be held in the consolidated district on the question of issuing serial bonds not exceeding $40,000 and levying an annual tax for the purpose of erecting, enlarging and equipping a school building or buildings in said district; but before the election was held a controversy arose among the voters as to the location of the proposed building, and thereupon the board of education expressed its purpose to place the building as near the geographical center of the district as was practicable, all things considered.

The election was carried in favor of the bonds and the special tax, but it would have failed if the board of education had not given assurance as to the location of the building. After the election, Clifton was chosen as the site, and R. H. Owen, a taxpayer residing in said district, brought suit against the board of education and the school committee, alleging that Clifton was not near the geographical center of the district, that the preëlection agreement had been disregarded, and that the board had abused its discretion in fixing the location. A preliminary restraining order was issued but was dissolved at the hearing. Upon appeal the Supreme Court affirmed the judgment vacating the injunction but retained the cause for final hearing. See 184 N. C., 267. At the February Term, 1923, Owen took a nonsuit as to the school committee. A tract of ten acres at Clifton, selected as a site, was conveyed to the board of education, the special tax was levied and collected for 1921 and 1922, and a notice was published that sealed bids would be received for the erection of the schoolhouse.

After the election was held, as herein set out, the board of education thought that Galatia School District should be included in the Seventy-first, and in order finally to determine the question, called into consultation the school committee of the Seventy-first Consolidated District, and the committee unanimously recommended the consolidation of the two districts; whereupon the board of education, in the exercise of its discretion, effected the consolidation. After doing so, the board submitted a referendum to the taxpayers of the Seventy-first Consolidated District as to the location of the building, and 201 votes were cast in favor of Glendale and three in favor of Clifton.

Before taking final action in the matter the board of education caused an election to be held in the Galatia District to ascertain whether the taxpayers therein would assume payment of their part of the taxes necessary to maintain the school and pay the bonds and interest, and said election resulted in favor of assuming the debt and consolidating the districts. This outline is not intended to represent all the facts found by the lower court.

The object of the present action is to determine whether the proposed bonds may be issued and by whom; to enjoin the board of education from changing the location of the school site from Clifton to Glendale; and to require the immediate sale of the bonds and the erection of the building.

Judge Sinclair issued a temporary restraining order, and the case was heard by him at the September Term, 1923. By consent, this case and *Owen v. Board of Education* were consolidated, a jury trial was waived, and the presiding judge found the facts and rendered the following judgment:

It is ordered, adjudged and decreed:

(1) That a bond issue in the amount of $40,000 of Seventy-first Consolidated School District, in denominations of the terms, etc., as specified in the order and notice of election hereinbefore set out, has been legally authorized, and when issued will be and constitute a valid and binding obligation upon the Seventy-first Consolidated School District as described in said order and notice, and the subjects of taxation therein can thereafter, in the manner provided by law, be taxed for the payment of said bonds and the interest thereon.

(2) The board of education is estopped from changing or attempting to change the location of the proposed school building from Clifton to Glendale, and its attempt so to do under the facts in this case is in excess of any authority vested in it by law, and is so unreasonable as to amount to an oppressive and manifest abuse of discretion, is of no effect and void, and said board is hereby perpetually restrained and enjoined from attempting to locate or erect said building at Glendale.

(3) Clifton has heretofore been selected, determined upon and designated by the board of education in the judicious exercise of its discretion as the location of the proposed building, and the board of education and the board of trustees of the district are hereby directed in the manner required by law to immediately erect and equip said building at Clifton as soon as the money can be realized from the sale of said bonds.

(4) The Board of Education of Cumberland County is hereby adjudged to be the proper body to issue and sell said bonds, and it is hereby directed forthwith to do all things needful and proper in the immediate issuance and sale of said bonds, and sell the same and apply the proceeds therefrom as above directed to the erection of said building at Clifton.

(5) The cost of this action, to be taxed by the clerk, is adjudged against the defendant board of education.

*Dye & Clark* for plaintiffs.
*Rose & Rose,* Attorney-General *Manning,* and Assistant Attorney-General *Nash* for defendants.

ADAMS, J. The cardinal question presented in the argument here is whether the board of education had the legal right to change the site of the proposed schoolhouse from Clifton to Glendale. His Honor found as a fact that in making the change the board was actuated by no improper motive, but he held as a legal inference that upon the facts in the case the change was *ultra vires,* or if not, that it amounted to an oppressive and manifest abuse of discretion. This conclusion, we presume, was based chiefly on the finding that the potential factor in the election of 17 November, 1921, was the board's assurance that the building should be erected at or near the geographical center of the district, and that a majority of the qualified voters would not have voted for the bonds if such assurance had not been given. If the record showed nothing more in regard to the change of site these facts would raise the serious question whether approval of the bond issue had not been submitted as a conditional proposition by which the defendants are bound (*McCracken v. R. R.,* 168 N. C., 62); but there are other facts which must be considered. It appears from the record in the Owen suit that there was serious objection to Clifton as a site for the school, and the board of education endeavored to allay the dissatisfaction. On 30 April, 1923, certain citizens of Seventy-first District filed with the board of education a petition requesting that the Galatia District be included in the Seventy-first School District and that the selection of a site for the building be reconsidered. The school com-

mittee of the Seventy-first District recommended such consolidation.
The board of education then decided that a referendum or test vote
should be taken on 18 May to ascertain the wishes of the qualified
voters of the two districts as to the location of the school building; and
the returns made by the judges of election show that 201 voters favored
Glendale and three favored Clifton. It is true that a new registration
was not required, and the three pollholders or a majority of them were
authorized to decide who were qualified to vote; but the names of the
voters were preserved and there is no suggestion that any one voted
who was not qualified or that any qualified voter was rejected. His
Honor found that a large proportion of the voters of the Seventy-first
District did not take part in the referendum for the reason that they
considered the location settled; that Galatia at that time was not a
part of the consolidated district, and that the referendum was not
authorized by law. But we are not now dealing with the legal efficacy
of the test vote as a binding obligation, but with the question whether
the board of education grossly abused its discretion or whether it in-
tended primarily to subserve the educational interests of the two dis-
tricts. Moreover, the defendants contend that in the bond election the
total registered vote of Seventy-first District was 199, the total regis-
tered vote of the Galatia territory 63, making a total combined regis-
tration of 262, and that a majority of the qualified voters residing in
the original Seventy-first District favored the proposed change of site.

While his Honor's findings of fact are comprehensive and in the
main supported by the evidence, they are subject to review in a suit
of this character (*Lee v. Waynesville,* 184 N. C., 565), and our under-
standing of the facts precludes approval of the ruling that changing
the schoolhouse site from Clifton to Glendale was beyond the power
vested in the board of education or was so unreasonable as to amount
to an oppressive and manifest abuse of discretion. If, as we have
intimated, the doctrine in *McCracken's case* is not applicable to the
facts here presented the board of education was remitted to the exercise
of its sound discretion in determining the matter of a change in the
location of the building (P. L. 1923, ch. ..., sec. 60 *et seq.*), and the
familiar principle (recognized by his Honor) is firmly established, that
in the absence of gross abuse the courts will not undertake to supervise
or control the discretion conferred by law upon public officers in the
discharge of their duties. In *Venable v. School Committee,* 149 N. C.,
120, the *Chief Justice* said: "The rebuilding of the school and the
change of site are matters vested by the statute in the sound discretion
of the school committee, and is not to be restrained by the courts unless
in violation of some provision of law or the committee is influenced by
improper motives or there is misconduct on their part." *Peters v.*

*Highway Com.,* 184 N. C., 30; *Person v. Watts,* 184 N. C., 506; *Davenport v. Board of Education,* 183 N. C., 570; *Dula v. School Trustees,* 177 N. C., 426; *Newton v. School Committee,* 158 N. C., 187; *Brodnax v. Groom,* 64 N. C., 244.

His Honor adjudged that the bonds when issued will be a valid obligation upon the Seventy-first Consolidated School District as described in the order and notice of election, and that the subjects of taxation therein shall be taxed for the payment of the bonds and interest. To this extent the judgment is correct; but if at an election duly held a majority of the qualified voters in the Galatia District pledged the faith and loaned the credit of the district for their proportionate part of the tax necessary to pay the bonds and interest, as provided in the Constitution, Art. VII, sec. 7, the bonds when issued will be a valid obligation upon the Seventy-first Consolidated School District, including Galatia.

In substance, the plaintiffs have also applied for a mandatory injunction to compel the immediate issuance of the bonds, and a question has arisen as to the body by whom they are to be issued. It is admitted that the election upon the bond issue was held under the provisions of chapter 87 of the Public Laws of the Extra Session of 1920. In the second section of that act it was provided that bonds authorized for a school district should be issued in the corporate name of the school district as provided by chapters 143 and 308 of the Public Laws of 1919. At the session of 1923 the General Assembly repealed chapter 87 of the Public Laws of 1920 (Extra Session) and made the following provision for bonds previously authorized: "If bonds or indebtedness have heretofore been voted under any act, and have not yet been issued or incurred, they may be issued or incurred pursuant to the provisions of the act under which they were voted." P. L. 1923, ch. 136, sec. 265. This section seems to be controlling.

His Honor's judgment as it appears of record is set out in the statement of facts. The first section thereof is modified to the extent of including Galatia District since its consolidation with Seventy-first Consolidated District, and as thus modified is affirmed. The second, third, and fifth sections are reversed, and the fourth section is reversed as to the corporate name in which the bonds are to be issued and sold and as to the direction that the schoolhouse be erected at Clifton; but the bonds should be issued and the proceeds applied as provided by law.

In part reversed.

In part modified and affirmed.