C. D. KISTLER v. THE BOARD OF EDUCATION OF RANDOLPH COUNTY, R. C. WHITE, G. F. LANE, K. A. MARTIN, T. S. BOULDIN, A. B. COX, EARL JOHNSON, J. F. PARRISH, E. W. FREEZE, W. B. WOODLIEF, COLON ALLRED AND C. V. REDDING.

(Filed 11 April, 1951.)

**1. Schools § 6a—**

The selection of sites for schoolhouses in local school districts in a county, except in city administrative units, is vested in the sound discretion of the county board of education, and its action cannot be restrained by the courts unless there has been a manifest abuse of discretion or its action is in violation of some provision of law. G.S. 115-85.

**2. Schools § 4d—**

In a suit to restrain the purchase of a school site selected by the board of education of the county, the demurrer of the individual members of the board is properly sustained, since the board is authorized to prosecute and defend suits for or against it in its corporate capacity, G.S. 115-45, and the individuals have no authority to exercise any of the powers plaintiff seeks to enjoin.

**3. Public Officers § 5a—**

Where there is no allegation that members of a board of education were not duly appointed to their respective positions as required by law, the legality of the acts of these appointees is not open to attack in an action to enjoin the board from purchasing a school site selected by it.

**4. Schools §§ 4b, 6a—**

The fact that the selection of a school site was voted at a special session of the board of education rather than at a regular meeting, G.S. 115-48, has

no bearing on the question of bad faith or abuse of discretion in the selection of the site.

**5. Same—**

The fact that a member of the county board of education promises to call a public mass meeting to discuss and consider the selection of a school site, and later refused to do so, has no bearing upon the question of bad faith or abuse of discretion in the selection of a site by the board at a subsequent special meeting, since promises made by individual members of the board have no binding effect on it unless expressly authorized, and the board has no authority to transact business except at a regular or special meeting.

**6. Schools § 6a: Public Officers § 7b—**

While the courts are alert to impeach any transaction where a public official has any pecuniary interest in a matter decided by him, mere allegation that a member of the board of education owns property in the vicinity of a site selected by the board for a school is insufficient to support a finding of bad faith on the part of the board in the absence of allegation that the member exercised an improper or corrupt influence over the other members of the board.

**7. Schools § 4b—**

A county board of education is not precluded by law from holding executive sessions.

**8. Schools §§ 4b, 6a—**

The law may not require a county board of education to hold a mass meeting in connection with the selection of a school site in the discharge of the board's discretionary responsibility.

APPEAL by plaintiff from *Sharp, Special Judge,* October Term, 1950, of RANDOLPH.

This is an action instituted by the plaintiff for and on behalf of himself and other citizens and taxpayers in Randleman School District, Randolph County, North Carolina, to restrain the defendants from purchasing a site selected by the Board of Education of Randolph County for the location of a new high school for the Randleman School District.

The sum and substance of the allegations of the seventeen page complaint may be summarized as follows:

1. That the defendants Lane, Cox, Bouldin, Martin and Johnson, at the times herein complained of, purported to hold and "occupy the offices of the Board of Education of Randolph County; that the defendant R. C. White, has at the times herein complained of . . . purported to hold the office of Superintendent of Public Instruction of Randolph County; that the defendants Parrish, Freeze, Woodlief, Allred and Redding have at the times complained of . . . purported to hold the offices of the Randleman School District Committee; but this plaintiff, upon

information and belief, denies that any of said defendants are legally holding the various offices above described, none of them having properly qualified themselves for said respective offices under and in accordance with the General Statutes of North Carolina."

2. That sometime after 4 June, 1949, certain State and local funds were allotted for the purpose of constructing a new high school building for the Randleman School District; that on or about 1 February, 1950, the defendants had tentatively selected a site on which to build the new high school building, whereupon certain citizens informed the defendant, J. F. Parrish, a member of the Randleman School District Committee, that they felt a public meeting should be called and the interested citizens and patrons of the school should be apprised as to what sites were being considered—to the end that a public discussion might be had on the relative merits of the various sites considered and to be considered. Pursuant to this request, a meeting was held on 14 February, 1950, at the Randleman High School. This meeting was attended by certain citizens of the community and the defendants R. C. White, Guy Lane, Earl Johnson and a majority of the members of the Randleman School District Committee. The defendants presented maps and data on five sites which the County Board of Education had under consideration, including the site which has been selected, known as the High Point Street site, which lies on the northwest of the Town of Randleman. It is alleged that the defendant Guy Lane was asked by several persons present if the defendant Board of Education would consider the present high school site in the Town of Randleman, if a survey was made to determine the correct acreage within the site and the correct acreage of available land contiguous thereto, and that Lane promised, in the presence of the entire group that if a survey was made by the group present, he would call another meeting of the group to study and discuss the matter further. The survey was made at the expense of the local Chamber of Commerce of Randleman, but the defendant Lane refused to call another meeting.

3. "That on 3 March, 1950, according to the information and belief of this plaintiff, the defendant Board held a secret special meeting attended by the defendants Lane, Johnson, Cox and Bouldin, and voted . . . unanimously to purchase the High Point Street site; that this was done without any notification to the local Chamber of Commerce or to other interested citizens, and no announcement of the action of the Board was made until the publication of the March 6th issue of *The Courier-Tribune* in Asheboro."

4. That, thereafter, the patrons of the Randleman School District and the Mayor and members of the Board of Aldermen of the Town of Randleman, called a public meeting of all the citizens and residents of the School District, on 7 March, 1950; that some 200 persons attended the

meeting and that an overwhelming majority of them voiced their objection to the selection of the High Point Street site and voted to circulate a petition, protesting the selection thereof. The petition, containing approximately 988 signatures of citizens and residents of the School District, was filed with the County Board of Education at a special meeting on 13 March, 1950, requesting the local Board and the State Board of Education to withhold and deny approval of the proposed site until further investigation of the advantages and disadvantages of each proposed site could be presented to the State Engineers and such other parties as may be interested, but recommended that the new high school be built on the present site of the Randleman High School. Representatives of the protesting group were then assured that no further action would be taken on the selection of a site until the matter could be discussed with Dr. Erwin, State Superintendent of Public Instruction. Thereafter a delegation of some 60 citizens and patrons of the Randleman School District went to Raleigh and expressed to Dr. Erwin their disapproval of the selection of the High Point Street site. Dr. Erwin agreed to make a personal inspection of the various sites proposed, and on 4 April, 1950, made such inspection of the five sites under consideration, including the present site of the Randleman High School. He recommended only two of the five sites, viz., the Swaim property and the High Point Street property, giving no intimation of a preference as between the two.

5. It appears that what was known as the Bostic site, as well as other proposed sites, including the Randleman High School property, having been rejected by Dr. Erwin, the plaintiff and other interested parties then sought to have the Board of Education select a site across the road from the original Bostic site, which is also Bostic property. This property lies south of Randleman on Highway 220. The offer was rejected at a meeting of the defendant Board of Education on 21 August, 1950, for the following reasons: (1) the price of the property was too high; (2) a deep ravine runs through the property; (3) the railroad runs through this site; and (4) the Board did not know whether the proper State officials would approve the site. Whereupon, the Board again approved the purchase of the High Point Street property.

6. It is further alleged that the defendants Lane, Martin, Bouldin, Cox and Johnson are guilty of misfeasance and arbitrary, dictatorial and capricious abuse of power in illegally attempting to select a site for the new school building in Randleman School District in direct opposition to the expressed opinion of approximately 90% of the citizens and patrons of the District; that the defendant Johnson, member of the County Board of Education, and E. W. Freeze and J. F. Parrish, members of the Randleman School District Committee, each own large tracts of land in

the immediate vicinity of the High Point Street site, and that the construction of a school on this site will greatly enhance the value of the property of these three defendants, and that this factor was the major consideration in the minds of the three defendants in selecting and recommending the selection of the High Point Street site; that the Bostic offer was rejected at a meeting which the public was not permitted to attend and the members of the Board failed to contact railroad officials to determine whether some solution could be had to the objection that the railroad ran through the proposed Bostic site.

Whereupon, the plaintiff prays for an injunction, restraining the defendants from acquiring the High Point Street site, and the issuance of a writ compelling the defendant, Board of Education of Randolph County, to issue a' notice for a public meeting inviting all citizens interested in "this project to present their case for or against any particular site available."

When the cause came on for hearing, the individual defendants demurred *ore tenus,* on the ground that the complaint did not state a cause of action against them. The demurrer was sustained, and the plaintiff excepted.

The defendant Board of Education of Randolph County, thereupon, through its attorney, demurred *ore tenus* to the complaint, on the ground that the same did not state a cause of action against it. The demurrer was likewise sustained, and the plaintiff excepted.

Plaintiff appeals to this Court and assigns error.

*L. T. Hammond and Ottway Burton for plaintiff.*
*Miller & Moser for defendants.*

DENNY, J. The selection of sites for schoolhouses in local school districts in a county, except in city administrative units, is vested in the sound discretion of the county board of education, and its action cannot be restrained by the courts, unless in violation of some provision of law, or there has been a manifest abuse of discretion. G.S. 115-85; *Feezor v. Siceloff,* 232 N.C. 563, 61 S.E. 2d 714; *Atkins v. McAden,* 229 N.C. 752, 51 S.E. 2d 484; *Board of Education v. Pegram,* 197 N.C. 33, 147 S.E. 622; *Board of Education v. Forrest,* 190 N.C. 753, 130 S.E. 621; *McInnish v. Board of Education,* 187 N.C. 494, 122 S.E. 182; *School Committee v. Board of Education,* 186 N.C. 643, 120 S.E. 202; *Davenport v. Board of Education,* 183 N.C. 570, 112 S.E. 246; *School Commissioners v. Aldermen,* 158 N.C. 191, 73 S.E. 905; *Venable v. School Committee,* 149 N.C. 120, 62 S.E. 902; *Pickler v. Board of Education,* 149 N.C. 221, 62 S.E. 902.

The Board of Education of Randolph County is a body corporate and by that name it shall hold all school property belonging to Randolph County, and it is authorized to purchase and hold real and personal property, to build and repair schoolhouses and to prosecute and defend suits for or against it in its corporate capacity.   G.S. 115-45.

The demurrer *ore tenus* to the complaint by the individual defendants was properly sustained.   These defendants as individuals possess no authority to exercise any of the powers the plaintiff seeks to enjoin. *Board of Education v. Commissioners,* 192 N.C. 274, 134 S.E. 852.

The plaintiff takes an anomalous position with respect to the defendant Board of Education.   In his complaint he alleges that the individuals purporting to be members of this board are not legally qualified to serve as members thereof, because they have not "properly qualified themselves, in accordance with the General Statutes of North Carolina."   In his brief, however, he argues and contends that the individuals named as board members are *de facto* officials and that their acts are the acts of the Board of Education; that no other person or persons are claiming the offices or contesting the right of these individuals to their respective offices, and that this action is not a *quo warranto* proceeding to remove them therefrom.

There being no allegation in the complaint to the effect that the members of the defendant Board of Education were not duly appointed to their respective positions as required by law, the legality of the acts of these appointees is not open to attack in this proceeding.   *Crabtree v. Board of Education,* 199 N.C. 645, 155 S.E. 550.

It appears from the allegations of the complaint that this is an unfortunate local fight, waged originally by persons primarily interested in having the new high school located on the present site of the Randleman High School, and presently by a small group who appears to be primarily interested in having the school located on the Bostic site.

It is well to keep in mind, however, that the Board of Education of Randolph County was charged with the legal duty to select a suitable site for a new high school, not only for the Town of Randleman but for the whole district, of which the Town of Randleman constitutes but a part.   And it will be noted that the complaint does not allege that the site chosen is an improper one from the standpoint of the local district as a whole.   Moreover, the petition signed by the 988 citizens and patrons of the school, and filed with the defendant Board of Education, merely requested that approval of the High Point Street site be withheld until further investigation.   This request was granted and the State Superintendent of Public Instruction, at the request of the protestants, inspected each proposed site and recommended the selection of the High Point Street property or the Swaim property.   The present site of the Randle-

KISTLER v. BOARD OF EDUCATION.

man High School, recommended in the petition referred to herein, not having been approved by the State Superintendent of Public Instruction, a new site was then proposed, which the Board considered and stated the reasons for its rejection.

The plaintiff is relying upon the following allegations to show bad faith and abuse of discretion: (1) That on 3 March, 1950, the defendant Board held a secret meeting and voted unanimously to purchase the High Point Street property as a site for the new high school; (2) that a member of the County Board of Education, Guy F. Lane, promised to call another public mass meeting to discuss and consider the selection of a site for the new high school, which he later refused to do; (3) that Earl Johnson, a member of the defendant Board, owns a large tract of land in the immediate vicinity of the High Point Street property which will be greatly enhanced in value if the high school is built on that site; and (4) that the Bostic offer was rejected at a meeting which the public was not permitted to attend.

These allegations will be discussed in the order above set forth. (1) The meeting on 3 March, 1950, is designated a secret meeting because it was not held on a first Monday in the month. Such an allegation has no bearing on the question of bad faith or abuse of discretion, in light of the provisions of G.S. 115-48, which read as follows: "The county board of education shall meet on the first Monday in January, April, July and October. It may elect to hold regular monthly meetings, and to meet in special sessions as often as the school business of the county may require."

(2) A county board of education has no authority to transact business except at a regular or special meeting, and statements or promises made by the individual members thereof have no binding effect on the board unless it expressly authorized them. *Tuttle v. Building Corp.*, 228 N.C. 507, 46 S.E. 2d 313, and cited cases. "As a rule authorized meetings are prerequisite to corporate action based upon deliberate conference and intelligent discussion of proposed measures. . . . The principle applies to corporations generally and by the express terms of our statute . . . every county is a corporate body." *O'Neal v. Wake County,* 196 N.C. 184, 145 S.E. 28; *Hill v. R. R.,* 143 N.C. 539, 55 S.E. 854.

(3) The courts are alert to impeach any transaction where a public official has any pecuniary interest in a matter decided by him. *Venable v. School Committee, supra.* But where a member of a county board of education has no financial interest in property selected as a school site, the mere allegation that he owns property in the neighborhood or immediate vicinity of such site, is not sufficient to support a finding of bad faith on the part of the board, in the absence of an allegation that in the selection of such site he exercised an improper or corrupt influence over other members of the board.

(4) While it may not be wise or expedient for boards such as the defendant Board of Education to hold executive sessions and exclude the public therefrom, we know of no statute or decision which prohibits the holding of such sessions.

In the final analysis, the plaintiff is simply seeking to eliminate the High Point Street property from the list of available sites for the new high school, by having the defendant Board permanently enjoined from procuring the property; and, to require the Board to call a mass meeting to discuss other available sites.

The law does not require a county board of education to hold a mass meeting in connection with the selection of a school site, and the courts have no authority to direct it to do so. The responsibility for the selection of schoolhouse sites, as heretofore pointed out, has been committed by the Legislature to the sound discretion of the respective local boards of education or to the respective boards of trustees in city administrative units; and the courts may not interfere with the exercise of discretionary powers conferred upon such boards, "unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of discretion." *Newton v. School Committee,* 158 N.C. 186, 73 S.E. 886.

The complaint contains numerous allegations against the individual defendants, who are not necessary or proper parties and whose demurrer *ore tenus* was sustained in the court below, as well as many allegations which are conclusions of the pleader, but in our opinion the complaint does not state a cause of action against the defendant Board of Education.

The ruling of the court below, in sustaining the demurrer *ore tenus* interposed by the defendant Board and by the individual defendants, will be upheld.

Affirmed.