JERRY ALAN REESE, Plaintiff v. THE CHARLOTTE-MECKLENBURG BOARD OF
EDUCATION and COUNTY OF MECKLENBURG, NORTH CAROLINA, Defendants

No. COA08-397

(Filed 5 May 2009)

## 1. Evidence— consideration of exhibit—resolution— Interlocal Agreement

The trial court did not err in a declaratory judgment action by considering one of the exhibits, a written resolution, attached to defendant board of education's answer in deciding defendants' Rule 12(c) motion to dismiss because: (1) the resolution merely ratified and memorialized in writing the actions of the board at its 8 May 2007 meeting approving an Interlocal Agreement with the county; (2) under the specific circumstances of this case, the complaint made clear reference to the events of 8 May 2007 which was memorialized in the resolution; and (3) even assuming *arguendo* that it was error for the trial court to consider the resolution, any error was harmless since by plaintiff's own admission, the Interlocal Agreement was properly before the trial court.

## 2. Schools— board of education—transfer of property to county—compliance with statutes

A county board of education's proposed transfer of an office site to the county as part of a redevelopment plan in exchange for use of office space in a county government center plus funds for developing replacement space complied with statutes authorizing the board, "upon such terms and conditions as it determines," to exchange property it determined was no longer suitable or necessary for public school purposes, N.C.G.S. §§ 160A-274 and 115C-518, because the board's determination that the replacement office space in the government center was "more suitable" for its needs was adequate to meet the unnecessary or unsuitable requirement in N.C.G.S. § 115C-518. Furthermore, plaintiff failed to overcome the presumption of legality of the acts of public officials.

## 3. Schools— board of education—transfer of property to county—absence of bad faith

A proposed transfer of a county board of education's office property to the county in exchange for use of space in a county

government center as part of the county's plan for redevelopment was not so "hastily arranged" that the transfer was tainted by bad faith as an attempt to circumvent statutory requirements for the primary benefit of private developers where: (1) a letter sent by plaintiff to the board five months prior to a board resolution authorizing the exchange noted that the board's staff was then negotiating the "land swap" transaction; and (2) plaintiff failed to overcome the presumption of legality of acts of public officials.

**4. Schools— board of education—county—exchange of property—not arbitrary or abuse of discretion**

Plaintiff's complaint against a county board of education and the county regarding an agreement to exchange board property for county office space and certain funds as part of a county plan for redevelopment failed to state a claim that the conduct of public officials who entered the agreement was arbitrary and capricious and a manifest abuse of discretion where the complaint alleged that public officials acted to the detriment of other interested parties, but the complaint failed to allege that the public officials acted to enrich themselves or acted in wanton disregard of the public good, and the complaint did not recite any procedure or guideline that was allegedly violated.

**5. Counties— exchange of property with board of education—statutory and special legislative authority**

A county had authority to enter into an agreement with the county board of education under which the board agreed to transfer board property to the county, which the county would convey in part to a private developer for a mixed-use development, in exchange for office space in a county government center and funds to develop additional office space because: (1) the transaction clearly falls within the provisions of N.C.G.S. § 160A-274(b) which no longer contains a "for use by the county" restriction; (2) the county will retain a portion of the property for use as a public park; and (3) the county was authorized by special legislation to engage in such a transaction.

**6. Schools— board of education—transfer of property—unilateral expectation of property interest—due process claim**

Plaintiff's allegation that he and others similarly situated were not afforded a process whereby they could submit a proposal to purchase county board of education property which the

board transferred to the county as part of an exchange agreement stated only a unilateral expectation of a property interest in the board's site that was insufficient to support a due process claim.

### 7. Pleadings— overview section of answer—not scandalous or unresponsive—denial of motion to strike

The trial court did not err by denying plaintiff's motion to strike the overview section of defendant county's answer to plaintiff's complaint regarding an exchange agreement between the county and the county board of education as "scandalous material" or "unresponsive to any allegation" where the trial court found that the county's answer complied with the Rules of Civil Procedure, that the allegedly objectionable language ascribed a motive for plaintiff's institution of the litigation, and that the matter might have a bearing upon the litigation.

Appeal by plaintiff from judgment entered 12 October 2007 by Judge Lindsay R. Davis, Jr., in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 September 2008.

*Jerry Alan Reese, pro se.*

*Womble Carlyle Sandridge & Rice, PLLC, by James P. Cooney III, and G. Michael Barnhill, for defendant Mecklenburg County.*

*Helms Mulliss & Wicker, PLLC, by James G. Middlebrooks and J. Trevor Johnston, for defendant Charlotte-Mecklenburg Board of Education.*

STEELMAN, Judge.

Where plaintiff's complaint made clear references to the events memorialized in a Resolution, the trial court did not err in considering the document in deciding defendants' Rule 12(c) motion to dismiss, even though the document itself was not specifically referenced in the complaint. The transactions encompassed by an Interlocal Cooperation Agreement between the Charlotte-Mecklenburg Board of Education and Mecklenburg County were authorized by the General Statutes and Local Acts of the North Carolina General Assembly. Plaintiff's constitutional claims were based upon a unilateral expectation of a property interest and were properly dismissed. The trial court did not abuse its discretion in denying plaintiff's motion to strike.

## I. Factual and Procedural Background

In January 2007, Mecklenburg County (County) entered into a Memorandum of Understanding with Cornerstone Real Estate Advisors, Inc. (Cornerstone) pertaining to the development and construction of Brooklyn Village, a mixed-use development to be located in Second Ward of the City of Charlotte. The Memorandum recited that County "owns or is in the process of acquiring 493,971 square feet of land located in Second Ward bounded by South McDowell Street, Third Street, Second Street and the First Baptist Church property . . . ." County agreed to swap a portion of this property for property owned by Cornerstone's parent company, with the balance of the land being retained by County for development as an urban park. The 493,971 square feet of property consists of two parcels: (1) a 5.91 acre parcel owned by the Charlotte-Mecklenburg Board of Education (Board), upon which its administrative offices are currently located; and (2) Marshall Park.

At its 1 May 2007 public meeting, the Mecklenburg County Board of Commissioners approved a resolution authorizing the execution of the Brooklyn Village Interlocal Cooperation Agreement with the Board. On or about 8 May 2007, the Board, by majority vote, approved the execution of the Brooklyn Village Interlocal Cooperation Agreement. This agreement referenced a 2002 Master Plan which was adopted by County, Board, and the City of Charlotte. It also referenced the Memorandum of Understanding between County and Cornerstone. It further recited:

*WHEREAS*, pursuant to G.S. 115C-518, the Board of Education desires to convey tax parcel #12507120 as shown on the map attached hereto as Attachment B (referred to as "BOE Office Building Site") to the County in exchange for more suitable replacement office space which (i) has a fair market value equal to or greater than the fair market value [of] the BOE Office Building Site which has been determined by appraisal to be $14,900,000 and (ii) provides equivalent or better utility to Charlotte-Mecklenburg Schools staff[.]

Under the terms of the Interlocal Agreement, Board agreed to convey to County its Office Building site. In exchange, County was to make available to Board $13,750,000.00 to develop additional replacement space, plus the use of one floor in the Government Center for twenty years. The agreement stated that the value of what was received by Board was not less than the fair market value of the Office Building

site. It was acknowledged that the Board property was "needed for an exchange with Cornerstone Real Estate Advisors which will allow the County to obtain a site in Third Ward . . . to be used as the site for a new County park and allow Cornerstone Real Estate Advisors and Spectrum Investment Services to develop Brooklyn Village." This agreement was executed by Board on 4 June 2007.

On 15 January 2007, plaintiff, writing on behalf of Brooklyn Renaissance, L.L.C., wrote to Dr. Peter C. Gorman, Superintendent of the Charlotte-Mecklenburg County Schools. In this letter, plaintiff expressed his opposition to the proposed interlocal agreement where Board's Office Property would be transferred to County. The letter acknowledged that the transaction had been reported to the County Commission at its 19 December meeting. It further demanded that other parties be given an opportunity to submit a proposal for acquisition of Board's Office Property and threatened to spend "3-5 years in litigation with CMS" if Board proceeded with the Interlocal Agreement. The letter closed with an offer to discuss plaintiff's plans for the Brooklyn Renaissance Project and how the Charlotte-Mecklenburg School properties would fit into these plans.

Plaintiff commenced this action (Mecklenburg County case 07 CVS 9456) by filing a summons and a notice of *lis pendens* on the Board of Education property on 11 May 2007. Plaintiff's complaint was filed on 31 May 2007 and asserted seven claims for relief as follows: (1) for a declaratory judgment that the proposed conveyance of Board's property was unlawful under the provisions of N.C. Gen. Stat. § 115C-518; (2) for a declaratory judgment that the proposed conveyance of Board's property was unlawful under the provisions of N.C. Gen. Stat. § 115C-518; (3) for a declaratory judgment that the proposed method of disposition of Board's property was unlawful under the provisions of N.C. Gen. Stat. § 160A-266; (4) for a declaratory judgment that Board abused its discretion in the proposed disposition of its property; (5) for a declaratory judgment that County's acquisition of Board's property was unlawful under the provisions of N.C. Gen. Stat. § 153A-158; (6) for a declaratory judgment that the actions of Board and County violated plaintiff's rights to due process and equal protection; and (7) for a preliminary and permanent injunction prohibiting Board from transferring the property to County.

On 4 June 2007, plaintiff filed a second complaint in Mecklenburg County Superior Court (case 07 CVS 9577) seeking to block County's acquisition of property from the City of Charlotte for part of the

**REESE v. CHARLOTTE-MECKLENBURG BD. OF EDUC.**

[196 N.C. App. 539 (2009)]

Brooklyn Village project. Plaintiff also filed a notice of *lis pendens* on the property of the City of Charlotte. On 11 July 2007, the Chief Justice designated both cases as "exceptional" cases pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts (2007).

Defendants filed answers to plaintiff's complaint, denying the material allegations contained therein, and attached to their answers a number of exhibits, which included documents referenced in plaintiff's complaint. On 3 August 2007, defendants in both lawsuits filed motions to strike plaintiff's notice of *lis pendens*, and for judgment on the pleadings pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure. On 17 September 2007, plaintiff filed a motion to strike a portion of County's answer pursuant to Rule 12(f) of the North Carolina Rules of Civil Procedure.

On 12 October 2007, the trial court filed an order encompassing both lawsuits that granted defendants' motions for judgment on the pleadings, dismissing both of plaintiff's actions. Defendants' motions to cancel the notices of *lis pendens* were also granted, and plaintiff's motion to strike was denied.

Plaintiff appeals.

## II. Consideration of Document not Referenced in Plaintiff's Complaint

**[1]** In his first argument, plaintiff contends that the trial court erred in considering one of the exhibits attached to Board's answer. We disagree.

Board and County attached to their answers copies of certain documents. Plaintiff acknowledges that all but one of the documents were referred to in his complaint and were thus properly considered by the trial court. However, he contends that the written resolution entitled "Resolution Ratifying Execution Of The Brooklyn Village Interlocal Cooperation Agreement With The County Of Mecklenburg, North Carolina" (Resolution) (Exhibit B to Board's answer) was not referenced in the complaint and should not have been considered by the trial court. The Board approved the Brooklyn Village Interlocal Agreement (Exhibit A to Board's answer) at its 8 May 2007 meeting and authorized its chairman to execute the agreement. Plaintiff filed a summons on 11 May 2007 and his complaint on 31 May 2007. The Interlocal Agreement was signed on 4 June 2007, and the Resolution was signed on 26 June 2007.

Plaintiff argues that the Resolution was signed after he filed his complaint and could not possibly be referenced in his complaint. He further argues that by considering matters outside of the pleadings, the trial court converted defendants' Rule 12(c) motion into a Rule 56 motion for summary judgment, and he was entitled to respond to the motion and conduct discovery before the motion to dismiss was heard.

We review the trial court's granting of a Rule 12(c) motion *de novo*. *Carpenter v. Carpenter*, 189 N.C. App. 755, 659 S.E.2d 762, 764 (2008). A "document attached to the moving party's pleading may not be considered in connection with a Rule 12(c) motion unless the non-moving party has made admissions regarding the document." *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 205, 652 S.E.2d 701, 708 (2007).

Plaintiff's complaint contains the following allegations relevant to the Resolution:

16. Upon information and belief, on May 1, 2007, the Mecklenburg County Board of County Commissioners approved a resolution authorizing the Chairman of the Board to execute a "Land Swap Interlocal Agreement" between Defendant County and CMS.

17. Upon information and belief, on or about May 8, 2007, the Charlotte-Mecklenburg Board of Education by majority vote authorized the Chairman of CMS to execute the land swap agreement.

18. Upon information and belief, on or prior to May 30, 2007, Defendant County, by and through its Chairman, Jennifer Roberts, executed that certain undated Brooklyn Village Interlocal Agreement between Defendant County and Defendant CMS (hereinafter referred to in this Complaint as the "Agreement").

19. Upon information and belief, the Agreement, executed by Defendant County, has been delivered to CMS and approved by its Director of Insurance and Risk Management and is pending signature by its Chairman, Joe White.

20. Upon information and belief, both Defendants have directed their respective staffs, administrative personnel and legal counsel to prepare appropriate documentation for the con-

summation of the transactions contemplated by and described in the Agreement.

Plaintiff's complaint goes on to make multiple references to the Interlocal Agreement entered into between Board and County.

We first note that the Resolution merely ratifies and memorializes in writing the actions of Board at its 8 May 2007 meeting approving the Interlocal Agreement. Plaintiff's complaint expressly acknowledges this action and also that Board and its staff were moving forward to "prepare appropriate documentation." Plaintiff does not contend that Exhibit B to Board's answer is in any way inaccurate. We hold that under the specific circumstances of this case, where the complaint makes clear reference to the events of 8 May 2007, which was memorialized in the Resolution, that the trial court did not err in considering the Resolution in the context of defendants' Rule 12(c) motion to dismiss.

Further, even assuming *arguendo* that it was error for the trial court to have considered the Resolution, any error was harmless because, by plaintiff's own admission, the Interlocal Agreement was properly before the trial court.

This argument is without merit.

### III. Statutory Claims

In his next two arguments, plaintiff contends that both defendants exceeded their statutory authority by agreeing to an exchange in which the Board site would ultimately be conveyed to a private third party. He further contends that he has alleged facts, which, when considered as true, demonstrate that Board cannot lawfully comply with the terms of the Brooklyn Village Interlocal Agreement because the Board site is crucial to its operations and is suitable and necessary for public school purposes.

Before analyzing plaintiff's arguments, we first review the relevant statutes and the rulings by the trial court.

### A. Intergovernmental Exchanges

The current version of N.C. Gen. Stat. § 160A-274 provides that:

(b) Any governmental unit may, upon such terms and conditions as it deems wise, with or without consideration, exchange with, lease to, lease from, sell to, or purchase from any other governmental unit any interest in real or personal property.

N.C. Gen. Stat. § 160A-274(b) (2007). Within its definition of "governmental unit," the statute includes any county and any school administrative unit. N.C. Gen. Stat. § 160A-274(a) (2007). The statute was amended in 2001 to eliminate a "joint use" clause from subsection (b).

Chapter 115C of the North Carolina General Statutes governs state and local educational agencies. Local boards of education are authorized to dispose of school property. N.C. Gen. Stat. § 115C-518 (2007). In relevant part, the statute requires that:

> When in the opinion of any local board of education the use of any building site or other real property or personal property owned or held by the board is unnecessary or undesirable for public school purposes, the local board of education may dispose of such according to the procedures prescribed in General Statutes, Chapter 160A, Article 12, or any successor provisions thereto. Provided, when any real property to which the board holds title is no longer suitable or necessary for public school purposes, the board of county commissioners for the county in which the property is located shall be afforded the first opportunity to obtain the property. The board of education shall offer the property to the board of commissioners at a fair market price or at a price negotiated between the two boards. If the board of commissioners does not choose to obtain the property as offered, the board of education may dispose of such property according to the procedure as herein provided. Provided that no State or federal regulations would prohibit such action.

N.C. Gen. Stat. § 115C-518(a) (2007).

Finally, defendant County has been authorized by the General Assembly to dispose of any real property interest by public sale or by negotiated private sale "when the Board of Commissioners determines that a sale or disposition of property will advance or further any county or municipality-adopted economic development, transportation, urban revitalization, community development, or land-use plan or policy." 2007 N.C. Sess. Law 33 (extending the limited authority first granted in 2000 N.C. Sess. Law 65, which included only five parcels of land fronting North College Street in the City of Charlotte, to include "property owned by Mecklenburg County").

### B. Rulings of the Trial Court

The trial court held that plaintiff's complaint failed to state claims against Board upon which relief could be granted because Board's

actions were authorized under the applicable statutes. First, the trial court concluded that Board acted within its authority pursuant to N.C. Gen. Stat. § 115C-36 in determining the suitability of the Board site. Second, the trial court concluded that such a determination complied with N.C. Gen. Stat. § 115C-518, even though it did not put the determination in writing until after the complaint was filed. Regarding plaintiff's allegations that the transaction was a "sham" designed to circumvent statutory provisions, the trial court held that:

> The complaint alleges that the School Board had not previously considered disposing of its headquarters, and "hastily" considered the Agreement; and that board members were somehow pressured to approve it, without any formal disposition plan, and without considering alternatives or even consulting real estate professionals. These largely conclusory allegations are negated by the contents of documents attached to and made part of the pleadings, which show that CMS was approached about the matter months before the Agreement was authorized and entered [sic]; that CMS stood to receive in exchange for the Education Center property in excess of appraised value; and that CMS considered the considerable age of the property and infeasibility [of] renovation.

The trial court concluded that the Interlocal Agreement was lawful under N.C. Gen. Stat. § 160A-274(b).

Having dismissed plaintiff's statutory claims against Board, the trial court then dismissed plaintiff's statutory claims against County on the basis that its acquisition of the Board site was authorized under the provisions of N.C. Gen. Stat. § 160A-274(a).

### C. Standard of Review

Insofar as plaintiff's arguments involve matters of statutory interpretation, our standard of review is *de novo*. *In re Appeal of Murray*, 179 N.C. App. 780, 786, 635 S.E.2d 477, 481 (2006). We do note that there is a presumption of legality afforded to public officials. *Gregg v. Commissioners*, 162 N.C. 479, 484, 78 S.E. 301, 302 (1913).

Regarding the specificity of the pleadings, "[t]he purpose of Rule 8(a) is to establish that the plaintiff will be entitled to some form of relief should he prevail on the claim raised by the factual allegations in his complaint[.]" *Holloway v. Wachovia Bank & Trust Co.*, 339 N.C. 338, 346, 452 S.E.2d 233, 237 (1994).

## D. Plaintiffs' Claims Against the Board[1]

**[2]** In his second argument, plaintiff contends that the trial court erred in its determination that Board properly acted under N.C. Gen. Stat. §§ 115C-36, 115C-518, and 160A-274(b). We disagree.

### 1. Unlawful Disposition and Conveyance Claims

Plaintiff contends that the trial court erred in dismissing his first two claims against Board because: (1) Board was first required to determine that the subject property was unsuitable and unnecessary for public school purposes; (2) Board's continued occupancy of the building on the disputed property demonstrates that the site is necessary under Chapter 115C; and (3) the failure of Board to determine that the site was unsuitable or unnecessary renders its actions unlawful under Chapter 115C.

Having reviewed the record, we cannot agree with plaintiff's assertions that these claims sufficiently alleged any claim upon which he would be entitled to relief. *Holloway* at 346, 452 S.E.2d at 237. The Board's resolution to authorize its Chairman to approve the Brooklyn Village Interlocal Agreement is afforded a presumption of legality and correctness. *Gregg* at 484, 78 S.E. at 302. N.C. Gen. Stat. §§ 160A-274 and 115C-518 authorized Board, "upon such terms and conditions as it deems wise," to exchange property owned by Board, based upon a determination that the property was no longer suitable and necessary for public school purposes. Board determined that the replacement office space in the Government Center was "more suitable" for its needs. We hold that: (1) this determination is adequate to meet the unnecessary or unsuitable requirement of N.C. Gen. Stat. § 115C-518, and (2) plaintiff has failed to overcome the presumption of legality afforded public officials. *Gregg* at 484, 78 S.E. at 302.

This argument is without merit.

### 2. Allegations Involving N.C. Gen. Stat. § 160A-266

**[3]** In his Third Claim for Relief, plaintiff sought a declaratory judgment that the Agreement represented "an unlawful 'sham' transaction structured and arranged for the sole purpose of circumventing the statutory requirements [of] (N.C.G.S. §160A-266) and for the primary benefit" of private developers. Plaintiff argues that the planned conveyance merely interposed County as a "strawman" to circumvent legislative limits on Board's authority to dispose of the property in a

---

1. First, Second, Third, and Fourth Claims for Relief.

private sale. We have already determined that the transactions at issue were authorized by statute. We consider this argument only to the extent that plaintiff alleged that the transaction was "hastily arranged" and thus tainted.

A "mere assertion of a grievance" against a governmental entity is insufficient to state a claim for relief. *Alamance County v. Dept. of Human Resources*, 58 N.C. App. 748, 750, 294 S.E.2d 377, 378 (1982) (some degree of factual particularity is required to satisfy the requirements of the substantive law giving rise to the pleadings).

Plaintiff alleged that Board "considered none of the available statutory methods for the disposition of the Education Center Property, but instead has in bad faith engaged in a hastily arranged structuring of a transaction to circumvent the public property disposition statutes for the sole benefit of Cornerstone/Spectrum[.]"

Plaintiff must overcome the presumption of legality afforded to public officials. *Gregg*, 162 N.C. at 484, 78 S.E. at 302. Moreover, where a source document, attached as an exhibit, is referred to by the pleadings, and its terms are inconsistent with the language of the pleading, the terms of the source document control. *See Wilson v. Development Co.*, 276 N.C. 198, 206, 171 S.E.2d 873, 879 (1970) ("The terms of such exhibit control other allegations of the pleading attempting to paraphrase or construe the exhibit, insofar as these are inconsistent with its terms."); *Hall v. Refining Co.*, 242 N.C. 707, 711, 89 S.E.2d 396, 399 (1955) (sustaining demurrer where contracts, incorporated in the complaint by amendment, "neutralized the allegations of the original complaint and put to naught the cause of action asserted therein"); *Williamson v. Miller*, 231 N.C. 722, 726, 58 S.E.2d 743, 746 (1950) (looking to the provisions of the contract attending the complaint rather than "the more broadly stated allegations . . . or the conclusions of the pleader as to its character and meaning").

In the instant case, plaintiff's allegations refer to his 7 January 2007 demand letter to Board. The first sentence of the letter states:

I am informed and believe that CMS staff is currently negotiating an inter-governmental agreement whereby CMS would relinquish title to the [Board site] as part of the so-called "Third Ward land swap" transaction. I am writing to express my adamant opposition to the transaction and the procedures being used by CMS in the contemplated disposition of this valuable public asset.

Because the letter was referenced in the complaint, it was properly before the court as part of the pleadings. *Wilson*, 276 N.C. at 206, 171 S.E.2d at 879. The letter pre-dates Board's May 2007 resolution by five months. We hold that the language of the letter controls over plaintiff's allegations, *id.*, and refutes his argument that the exchange of properties contemplated by the Interlocal Agreement was hastily arranged. Plaintiff's third claim failed to overcome the presumption of legality afforded to acts by public officials. *Gregg*, 162 N.C. at 484, 78 S.E. at 302. The trial court correctly concluded that plaintiff's allegations were grievances, *Alamance County*, 58 N.C. App. at 750, 294 S.E.2d at 378, rather than allegations sufficient to demonstrate bad faith circumvention of the law.

This argument is without merit.

### 3. Discretionary Powers of the Board

[4] Plaintiff contends that the allegations in his Fourth Claim for Relief were sufficient to withstand defendants' motion because they are "more than adequate" to show arbitrary and capricious conduct and a manifest abuse of discretion by Board. Plaintiff contends that the complaint alleges the following: The Interlocal Agreement was presented to Board only minutes before its consideration and approval; prior to its consideration of the Interlocal Agreement or the meeting where the Agreement was approved, Board had no plan for disposition of the Board site, had not engaged a consultant or real estate broker to advise it on the most effective means of disposal, or evaluated or considered any alternative disposition method which would have yielded a greater financial benefit; Board was "pressed into a hasty approval" of the Agreement by County. Specifically, plaintiff alleged that defendants "actions . . . are in bad faith with the primary motive of enriching Cornerstone and Spectrum to the detriment of other parties who might be interested in purchasing or developing the Education Center Property."

In support of his arguments, plaintiff cites three cases that pre-dated the legislature's enactment of N.C. Gen. Stat. § 160A-274. In particular, he relies upon *Barbour v. Carteret County*, 255 N.C. 177, 120 S.E.2d 448 (1961), for the proposition that "allegations that . . . [c]ounty commissioners paid twice the value for land without proper investigation stated a cause of action for arbitrary conduct and abuse of discretion."

In *Barbour*, our Supreme Court reversed a judgment sustaining a demurrer when the *Barbour* defendants "admit[ted that] the commis-

sioners [had], without appraisal or other investigation as to value and for reasons known only to them, hastily agreed to pay $75,000 for property reasonably worth less than half that sum." *Id.* at 182, 120 S.E.2d at 452. In the instant matter, plaintiff's complaint does not allege, nor do defendants' answers admit, that either defendant had agreed, hastily or otherwise, to pay or exchange property for less than the appraised or fair market value.

The *Barbour* Court stated that:

Courts have no right to pass on the wisdom with which [county commissioners] act. Courts cannot substitute their judgment for that of the county officials honestly and fairly exercised. For a court to enjoin the proposed expenditure, there must be allegation and proof that the county officials acted in wanton disregard of public good. *Burton v. Reidsville*, 243 N.C. 405, 90 S.E.2d 700; *Kistler v. Board of Education*, 233 N.C. 400, 64 S.E.2d 403; *Waldrop v. Hodges, supra; Jackson v. Commissioners*, 171 N.C. 379, 88 S.E. 521; *Commissioners v. Commissioners*, 165 N.C. 632, 81 S.E. 1001; *Newton v. School Comm.*, 158 N.C. 186, 73 S.E. 886; *Jeffress v. Greenville*, 154 N.C. 490, 70 S.E. 919.

*Id.* at 181, 120 S.E.2d at 451. Although plaintiff's complaint alleges that the public officials acted "to the detriment of other [interested] parties[,]" there are no allegations that those officials acted to enrich themselves or in wanton disregard of the public good. We hold that plaintiff's complaint failed to satisfy the pleading requirements of *Barbour*, and his reliance on *Barbour* is misplaced.

Before this Court, plaintiff orally argued that his pleadings alleged customary procedures in the marketplace that demonstrated Board's failure to follow its own procedures for disposing of property. This argument is disingenuous. Plaintiff's complaint does not recite a single procedure or guideline of either Board or County, much less allege that such procedures were violated.

This argument is without merit.

### E. Plaintiffs' Claims Against the County[2]

[5] In his third argument, plaintiff contends that the trial court erred in its determination that County was authorized to enter into the exchange of properties because N.C. Gen. Stat. § 153A-158 limits its authority to acquire land "for use" by County, and County has no plans to use the Board site. We disagree.

---

2. First, Second, Third, and Fifth Claims for Relief.

Plaintiff's primary argument is that N.C. Gen. Stat. § 160A-274 is not independent authority that obviates the limitations established by N.C. Gen. Stat. § 153A-158. He contends that intergovernmental exchanges involving acquisition of land by a county must still comply with the provisions of § 153A-158, and that, under *Carter v. Stanly County*, 125 N.C. App. 628, 482 S.E.2d 9, *disc. review denied*, 356 N.C. 276, 487 S.E.2d 540 (1997), County may not acquire the property to convey it to a private developer. County asserts that N.C. Gen. Stat. § 160A-274 is independent authority.

In *Carter*, Stanly County sought to purchase privately-owned land as an enticement to the State for the building of a prison. The *Carter* plaintiff sought declaratory judgment that the proposed transaction exceeded Stanly County's statutory authority under N.C. Gen. Stat. §§ 153A-158 and 160A-274(b). The trial court dismissed the complaint, and Carter appealed. Before this Court heard the appeal, the General Assembly enacted legislation authorizing the transaction. 1996 N.C. Sess. Law 600. This Court first analyzed Stanly County's authority under the general statutes and Dillon's Rule[3], concluding that, absent the special statute, the transaction would indeed exceed Stanly County's authority. Instead, the Court concluded that "Stanly County's actions are now authorized by the General Assembly." *Carter*, 125 N.C. App. at 634, 482 S.E.2d at 13.

Plaintiff's argument rests entirely upon *Carter's* analysis of N.C. Gen. Stat. §§ 153A-158 and 160A-274(b) and its application of Dillon's Rule to hold that, in the absence of the special legislation authorizing the transaction, Stanly County was not authorized to consummate the transaction. However, this analysis is not applicable to the facts of this case.

At the time of the *Carter* decision, N.C. Gen. Stat. § 160A-274(b) read as follows:

Any governmental unit may, upon such terms and conditions as it deems wise, with or without consideration, exchange with, lease to, lease from, sell to, purchase from, or enter into agreements *regarding the joint use* by any other governmental unit of any interest in real or personal property that it may own.

---

3. *Carter* quotes the case of *White v. Union County*, 93 N.C. App. 148, 377 S.E.2d 93 (1989) for Dillon's Rule: " '[A] municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation. . . .' " *Carter*, 125 N.C. App. at 632, 482 S.E.2d at 11.

N.C. Gen. Stat. § 160A-274(b) (as quoted and emphasized in *Carter*, 125 N.C. App. at 632, 482 S.E.2d at 12.) The "agreements" clause including its limiting language as to "joint use" was eliminated in 2001 N.C. Sess. Laws ch. 328 § 6. *Carter* relied upon the "for use by the county . . ." language contained in N.C. Gen. Stat. § 153A-158, and the "joint use by any other governmental unit" language to hold that "both statutes place express limits on who may use the property purchased by the County." *Carter*, 125 N.C. App. at 633, 482 S.E.2d at 12. The transaction at issue clearly falls under the provisions of N.C. Gen. Stat. § 160A-274(b), which no longer contains the "use" restriction present at the time *Carter* was decided. Thus, *Carter* is not controlling in this case.

Second, in the instant case, County will be retaining a portion of the property received from Board to be used as a public park. *Carter* placed great weight on the fact that Stanly County would not be using the property for its own governmental functions or jointly with the State. The instant case is thus factually distinguishable from *Carter*.

Finally, plaintiff focuses entirely upon the portion of the *Carter* opinion which is essentially *dicta*. The ultimate holding in *Carter* was to affirm the trial court's dismissal of plaintiff's complaint, based upon the special legislation. As in *Carter*, there is special legislation authorizing County to engage in this type of transaction. 2000 N.C. Sess. Laws 65; *see also* 2007 N.C. Sess. Laws 33. While these acts are not as transaction specific as the legislation described in Carter, they are sufficiently broad enough to encompass the transactions that are the subject of this litigation and to meet the requirements of Dillon's Rule.

## IV. Constitutional Claims

[6] In a portion of his third argument, plaintiff contends that defendants' "collusive actions" show intentional and purposeful discrimination and violated his constitutional rights to due process and equal protection. We disagree.

In his Sixth Claim for Relief and to this Court, plaintiff asserts that he and others similarly situated were not "afforded a process by which they could submit a proposal" to purchase the Board site. He cites a "demand letter" sent to Board on 7 January 2007, in which he threatened litigation and demanded that

should CMS decide to dispose of the [Board site], such disposition should be conducted in accordance with a process that gives

an equal opportunity for any qualified and interested party to submit a proposal for the acquisition and development of the site in the context of the current facilities needs of [the Board].

In the letter, plaintiff requested an opportunity to discuss his proposal to develop a four component campus for Board.

The threshold question in any due process claim is whether "a constitutionally protected property interest exists." *McDonald's Corp. v. Dwyer*, 338 N.C. 445, 447, 450 S.E.2d 888, 890 (1994). "To demonstrate a property interest under the Fourteenth Amendment, a party must show more than a mere expectation; he must have a legitimate claim of entitlement." *Id.* (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 33 L. Ed. 2d 548 (1972)). "A legitimate claim of entitlement requires more than a unilateral expectation of a property interest." *Sack v. N.C. State Univ.*, 155 N.C. App. 484, 499, 574 S.E.2d 120, 131 (2002) (citations and internal quotations omitted).

We agree with the trial court that plaintiff's complaint failed to allege anything more than a unilateral expectation of a property interest. Unilateral expectations are insufficient to demonstrate a property interest. *McDonald's* at 447, 450 S.E.2d at 890; *Sack* at 499, 574 S.E.2d at 131.

As to plaintiff's claims of equal protection violations, these claims are grounded in his allegations that defendants abused their discretion in negotiating urban development. Having determined that those allegations were unfounded, we decline to address his equal protection claim.

This argument is without merit.

### V. Motion to Strike

[7] In his final argument, plaintiff contends that the trial court erred in denying his motion to strike the overview section of County's answer because said section was "scandalous material" and "unresponsive to any allegation." We disagree.

"Rule 12(f) of the North Carolina Rules of Civil Procedure, allows the court to strike 'from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter.' " *Carpenter*, 189 N.C. App. at 759, 659 S.E.2d at 765 (quoting N.C.R. Civ. P. 12(f) (2005)).

Rule 12(f) motions are "addressed to the sound discretion of the trial court and its ruling will not be disturbed absent an abuse of dis-

cretion." *Id.* (citation and internal quotations omitted). " 'Matter should not be stricken unless it has no possible bearing upon the litigation. If there is any question as to whether an issue may arise, the motion [to strike] should be denied.' " *Id.*, 659 S.E.2d at 766 (quoting *Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 316, 248 S.E.2d 103, 108, *disc. review denied*, 295 N.C. 735, 249 S.E.2d 804 (1978)).

In denying plaintiff's motion, the trial court found that County's answer complied with Rule 8(b) and (c) of the N.C. Rules of Civil Procedure and that the objectionable language "ascribe[d] a motive for the plaintiff's institution of litigation that is personal to him as one engaged in business pursuits [with an] 'alternative plan' for the [subject] properties . . . ." The court further found that the matter might have a bearing upon the litigation. We hold that the trial court did not abuse its discretion when it denied the motion to strike.

This argument is without merit.

## VI. Conclusion

The trial court properly considered defendants' exhibits as part of the record before it in defendants' Rule 12(c) motion. The trial court did not err in granting defendants' motion for judgment on the pleadings when the challenged transactions were authorized under prevailing law. The trial court did not abuse its discretion in denying plaintiff's motion to strike a portion of the County's answer when the answer complied with the provisions of Rule 8 of the North Carolina Rules of Civil Procedure.

AFFIRMED.

Judges JACKSON and STROUD concur.