Brenner v. Hound Ears Club, Inc., 2022 NCBC 47.

STATE OF NORTH CAROLINA

WATAUGA COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
22 CVS 128

MICHAEL BRENNER; EDWIN
CUMMER; JACK ELLEDGE;
DOUGLAS GOODENOUGH;
THOMAS J.GOSDECK; ASHLEY
HOGE; WOODY HUBBARD;
RICHARD KAUFMAN; TIMOTHY
MORSE; ROBERT PRAGER; MARK
RICKS; WILLIAM WALKER; and
STEPHEN WEISHOFF,

Plaintiffs,

v.

HOUND EARS CLUB, INC.,

Defendant.

**ORDER AND OPINION ON RULE
12(c) CROSS-MOTIONS FOR
JUDGMENT ON THE PLEADINGS**

1.  **THIS MATTER** is before the Court upon Plaintiffs Michael Brenner, Edwin Cummer, Jack Elledge, Douglas Goodenough, Thomas Gosdeck, Ashley Hoge, Woody Hubbard, Richard Kaufman, Timothy Morse, Robert Prager, Mark Ricks, William Walker, and Stephen Weishoff's (collectively, the "Plaintiffs") Motion for Judgment on the Pleadings ("Plaintiffs' Motion"), (ECF No. 16), and Defendant Hound Ears Club, Inc.'s ("Defendant") Motion for Judgment on the Pleadings ("Defendant's Motion"; together with Plaintiffs' Motion, the "Motions"), (ECF No. 14), in the above-captioned case.

2.  After considering the parties' respective briefs and the arguments of counsel at the hearing on the Motions, the Court hereby **GRANTS** Defendant's Motion, **DENIES** Plaintiffs' Motion, and **DISMISSES** this action with prejudice.

*Miller & Johnson, PLLC, by Nathan A. Miller, for Plaintiffs Michael Brenner, Edwin Cummer, Jack Elledge, Douglas Goodenough, Thomas Gosdeck, Ashley Hoge, Woody Hubbard, Richard Kaufman, Timothy Morse, Robert Prager, Mark Ricks, William Walker, and Stephen Weishoff.*

*Parker Poe Adams & Bernstein, LLP, by Morgan H. Rogers and Alexandra Davidson, for Defendant Hound Ears Club, Inc.*

Bledsoe, Chief Judge.

I.

FACTUAL AND PROCEDURAL BACKGROUND

3. The Court does not make findings of fact when ruling on motions to dismiss under Rule 12(c) of the North Carolina Rules of Civil Procedure; rather, the Court recites only those facts from the Complaint that are relevant and necessary to the Court's determination of the motion. *See Aldridge v. Metro Life Ins. Co.*, 2019 NCBC LEXIS 53, at *8 (N.C. Super. Ct. Aug. 15, 2019).

4. Defendant is a non-profit corporation organized under North Carolina law, which owns and operates a private club named Hound Ears Club (the "Club") in Watauga County, North Carolina. (Compl. ¶ 17, ECF No. 3.) The Club operates a gated residential subdivision that includes various communal amenities, including a swimming pool, a restaurant, tennis courts, and other facilities. (Compl. ¶ 18.)

5. The Club sells and transfers equity memberships, up to a membership cap set by the Club's bylaws. (Compl. ¶¶ 20–21; Compl. Ex. A at 8, ECF No. 3.) The bylaws establish six categories of membership. (Compl. Ex. A at 17–21.) Equity members in five of the six categories hold the right to one vote each during votes held on Club business, including the election of the Club's Board of Directors. (Compl. ¶¶

25, 29.) The Club does not require ownership of property in the Club's subdivision as a condition of equity membership. (Compl. ¶ 30.)

6. As of 11 September 2021, the Club's equity membership was filled up to its current cap of 355 members. Of the equity members, 276 owned property within the subdivision, while the other 79 did not. (Compl. ¶ 31.) The Club's bylaws make no explicit distinction between property-owning equity members and non-property-owning equity members. (Compl. Ex. A at 17–21.)

7. All equity members are subject to assessments by the Club. The Club's authority to assess payments from equity members is under the Club's bylaws, which authorize the Club's Board of Directors to compute and levy dues and fees on equity members. (Compl. Ex. A at 11.) The Club collects fees from property owners within the subdivision to fund the subdivision's various amenities pursuant to the Club's declaration of restrictions. (Compl. ¶¶ 37–38).[1]

8. The Club's bylaws further authorize the Board to "issue and make available [the six membership categories] and other categories of membership as long as the maximum number of voting memberships does not exceed three hundred fifty-five (355) . . . ." (Compl. Ex. A at 17.)

9. The bylaws also empower the Board to "determine . . . the amount of dues, fees, . . . and other charges to be paid for each category of membership." (Compl. Ex. A at 11.)

---

[1] See Second Amendment to Declarations of Restrictions for Hound Ears Club, recorded on October 14, 2003 in Watauga County, North Carolina Record Book 900, Page 225. (Compl. ¶ 36.)

10.     The Club bylaws establish a detailed set of procedures to amend the bylaws. (Compl. Ex. A at 15.) These procedures provide that the Board may amend the bylaws so long as the membership receives advance notice of the Board's vote, the Board approves the amendment by a two-thirds supermajority, and the amendment is not "materially adverse" to the rights of the Club's members. (Compl. Ex. A at 15.)

11.     Several categories of amendment are placed explicitly beyond the powers of the Board, and require an affirmative vote of a majority of all members for passage. (Compl. Ex. A at 15–16.) The five such categories are any amendment that would: (1) increase the cap on memberships, (2) change restrictions on memberships, (3) change membership eligibility, (4) change the number of directors needed to constitute the full Board, or (5) which would alter the amendment procedures themselves. (Compl. Ex. A at 16.)

12.     At the Board's 11 September 2021 annual meeting, the Board adopted a new fee structure to fund the subdivision's amenities. (Compl. ¶ 39.) This change included the assessment of fees against non-property-owning equity members, and it was memorialized to the Club members in a 17 September 2021 letter from the President of the Board. (Compl. Ex. B, ECF No. 3.)

13.     Plaintiffs initiated the instant action on 22 March 2022, asserting claims against the Club for breach of the bylaws and seeking a declaratory judgment. (*See* Compl. ¶¶ 46–55.) Defendant filed its Answer on 25 April 2022. (*See* Answer, ECF No. 5.)

14.     The parties filed the instant Motions on 30 June 2022.  (*See* Def.'s Mot. J. Pleadings, ECF No. 14; Pls.' Mot. J. Pleadings, ECF No. 16.)  After full briefing, the Court held a hearing on the Motions on 17 August 2022 (the "Hearing"), at which all parties were represented by counsel.  The Motions are now ripe for resolution.

II.

LEGAL STANDARD

15.     Rule 12(c) is intended "to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit and is appropriately employed where all the material allegations of fact are admitted in the pleadings and only questions of law remain."  *Dicesare v. Charlotte-Mecklenburg Hosp. Auth.*, 376 N.C. 63, 70 (2020) (cleaned up).  In deciding a Rule 12(c) motion, "the trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party, with all well-pleaded factual allegations in the nonmoving party's pleadings being taken as true and all contravening assertions in the movant's pleadings being taken as false."  *Id*.  "All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion."  *Ragsdale v. Kennedy*, 286 N.C. 130, 137 (1974).

16.     "An exhibit, attached to and made a part of the [complaint]," *Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 206 (1970), and documents that are "the subject of the action and specifically referenced in the complaint," *Erie Ins. Exch. v. Builders Mut. Ins. Co.*, 227 N.C. App. 238, 242 (2013), are properly considered on a Rule 12(c)

motion. Where a document is attached, "[t]he terms of such exhibit control other allegations of the pleading attempting to paraphrase or construe the exhibit, insofar as these are inconsistent with its terms." *Wilson*, 276 N.C. at 206. Before a Rule 12(c) motion may be granted, however, "[t]he party moving for judgment on the pleadings must show that no material issue of fact exists and that he is entitled to judgment as a matter of law." *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 682 (1987). In the contract context, if it is clear from the plain language of a contract that a breach has or has not occurred, judgment on the pleadings may be appropriate. *See DeTorre v. Shell Oil Co.*, 84 N.C. App. 501, 504 (1987).

## III.

## ANALYSIS

A. <u>The Board's Authority to Create New Classes of Membership</u>

17. Plaintiffs' central contention is that the Defendant's Board of Directors' adoption of the new fee structure created new classes of membership beyond the six categories established in the bylaws, which constituted an amendment to the bylaws and was therefore procedurally defective. (*See* Pls.' Br. Supp. Pls.' Mot. J. Pleadings 7 [hereinafter "Pls.' Br. Supp."], ECF No. 17.) Defendants contend that the Board did not create any new classes of membership or, in the alternative, that, if it did, the Board possessed the power to do so. In either case, Defendant argues that the Board had the power to assess the fees at issue in this case. (Def.'s Br. Supp. Def.'s Mot. J. Pleadings 11–16 [hereinafter Def.'s Br. Supp."], ECF No. 15.)

18.     As explained below, the Court concludes that, even assuming that the Board created a new non-property-owning equity membership class as Plaintiffs plead, the Board nonetheless had the authority to do so under the bylaws, necessitating dismissal of Plaintiffs' claims.

19.     To begin, the bylaws of a voluntary association are a contract between the entity and its members, over which traditional rules of contract interpretation govern. *See Master v. Country Club of Landfall*, 263 N.C. App. 181, 187 (2018) (quoting *Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 237 (1984)). "[I]f the contract is clearly expressed, it must be enforced as it is written." *Parks v. Venters Oil Co.*, 255 N.C. 498, 501 (1961) (quoting *Brock v. Porter*, 220 N.C. 28, 28 (1941)).

20.     Plaintiffs are correct that, prior to the Board's creation of what Plaintiffs contend is a new non-property-owning equity membership class, only six classes existed. (*See* Pls.' Br. Supp. 7–8.)  But this observation is immaterial.  The Club's bylaws expressly empower the Board to create membership classes beyond the six named classes. (*See* Compl. Ex. A at 17 ("The Board reserves the right to issue and make available these *and other* categories of membership . . . ." (emphasis added)).) The Board's power to create new membership classes is subject only to the specified membership cap and not to any limitation on the number of classes. (*See* Compl. Ex. A at 17.)  Plaintiffs agree that the Board's challenged action did not affect the membership cap.  That there happened to be six classes at the time of the decisions at issue in this case is legally irrelevant.

21. Further, the membership cap and the bylaws' amendment procedures demonstrate that the drafters of the bylaws knew how to constrain the Board's powers when they wished. For example, the bylaws prohibit the Board from altering eligibility requirements for memberships without member approval. The same is true for the membership cap. (*See* Compl. Ex. A at 15–22.) In contrast, the creation of new membership classes is not one of the categories of bylaws amendments that requires member approval, so it is not subject to the procedural requirements for a Board-initiated amendment. (*See* Compl. Ex. A 15–16.)

22. It is a central principle of contract interpretation that the various terms of a contract are to be harmoniously construed, so that every provision is given effect if possible. *WakeMed v. Surgical Care Affiliates, LLC*, 243 N.C. App. 820, 824 (2015) (quoting *In re Foreclosure of a Deed of Trust*, 210 N.C. App. 409, 415 (2011)). The bylaw drafters chose to restrict some powers of the Board, while leaving others unfettered. Observing this distinction therefore provides for a more harmonious reading of the bylaws as a whole that better effectuates the intent of the drafters.

23. The Court's interpretation is reinforced by the use of the verb "to issue," (Compl. Ex. A at 17), which implies a unilateral power of the Board to promulgate memberships without input from the members or any other entity. *See, e.g., Issue, Black's Law Dictionary* (10th ed. 2014) ("to issue" means, among other things, "[t]o be put forth officially" or "[t]o send out or distribute officially"); *see also, e.g., Mining Energy, Inc. v. Dir., Office of Workers' Comp. Programs*, 391 F.3d 571, 575 (4th Cir. 2004) (collecting dictionary definitions); *Griswold v. United States*, 59 F.3d 1571, 1580

(11th Cir. 1995) ("To 'issue' means to send out, put into circulation, distribute or publish"); *Religious Emps. Ass'n, Inc. v. Pilot Life Ins. Co.*, 746 F.2d 1478, 1478 (6th Cir. 1984) ("to issue" means for the issuer to relinquish control).

24.     The Board's creation of new classes of membership is therefore not a contravention or amendment of the bylaws; rather, it is the exercise of a power expressly granted to the Board by the bylaws.  Plaintiffs' contention that the Board failed to comply with procedural requirements to amend the bylaws is therefore inapposite.  (*See* Pls' Br. Supp. 7 (arguing that the change is an amendment adverse to the membership, and therefore that member approval is required for passage).)

25.     The creation of new membership classes is a proper exercise of the Board's powers under the bylaws, not an amendment of the bylaws.  The Court therefore concludes that, even if the Board created a new class of non-property-owning equity membership, Plaintiffs' contention that the Board failed to comply with procedural requirements to amend the bylaws is without merit.

B.     The Board's Authority to Assess Fees on New Membership Classes

26.     The Court next examines whether the Board acted properly to assess fees against the new membership class Plaintiff alleges the Board created.  Plaintiff contends that the assessment of the fees at issue violates the North Carolina Nonprofit Corporation Act.  (Pls.' Br. Supp. 8–9.)  Defendant argues that the bylaws confer the authority to assess fees as the Board sees fit, and that the fees here are therefore proper.  (Def.'s Br. Supp. 13–16.)

27. Because bylaws of a voluntary association are treated as a contract between the entity and its members, *see Master*, 263 N.C. App. at 187, the Court must enforce the unambiguous terms of the bylaws as written. *See, e.g., Renfro v. Meacham*, 50 N.C. App. 491, 496 (1981) (citing *Root v. Allstate Ins. Co.*, 272 N.C. 580, 583 (1968)).

28. The Club's bylaws state that the Board will "determine . . . the amount of dues, fees, . . . and other charges to be paid for each category of membership." (Compl. Ex. A at 11.) The bylaws therefore unambiguously empower the Board to assess fees in an amount it determines against "each" membership class. (Compl. Ex. A at 11.) This authority is unrestricted and does not limit the assessment power to the original six classes or to one class in particular. (*See* Compl. Ex A at 11.)

29. Based on the plain language of the bylaws, the Court agrees with Defendant that the assessment of fees on any new membership class of non-property-owning equity members was properly enacted. The Board has the power to assess fees against each membership class, and here, it chose to assess a fee schedule against a particular purported class. (Compl. Ex. B.) This action was within the Board's express powers under the bylaws.

30. In addition, the assessment does not violate the North Carolina Nonprofit Corporation Act (the "Act"). The Act provides, in relevant part, that all members of a nonprofit corporation shall have the same qualifications, rights, and obligations, except as authorized in the bylaws. N.C.G.S. § 55A-6-20. The Club's bylaws expressly provide for multiple categories of membership. (*See* Compl. Ex. A at 17 ("The Board reserves the right to issue and make available *these and other categories of*

*membership . . . .*") (emphasis added).) Therefore, the classification of members into various classes of membership does not violate the statute because the bylaws authorize multiple classes.

31. Nor is there any allegation that individual members within the same class are subject to unequal treatment. The non-property-owning equity members are obliged, as a class, to pay an assessment of $1,500 per year, and the property-owning equity members are obliged, as a class, to pay $4,500 per year. (*See* Compl. Ex. B.) The bylaws do not authorize unequal treatment, but the respective obligations of each class are consistent within each class, and therefore do not violate the Act's proscription against unequal treatment without bylaws authorization.

32. The Court therefore finds that if the Board's action created a new membership class of non-property-owning equity members, the Board's assessment of fees against this alleged new membership class was properly enacted under the Club's bylaws.

IV.

CONCLUSION

33. **WHEREFORE**, the Court, for the foregoing reasons, hereby **ORDERS** as follows:

a. Plaintiffs' Motion for Judgment on the Pleadings, (ECF No. 16), is **DENIED**.

b. Defendant's Motion for Judgment on the Pleadings, (ECF No. 14), is **GRANTED** and this action is hereby **DISMISSED** with prejudice.

**SO ORDERED**, this, the 31st day of August, 2022.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge
